**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lester Clifford LEE, Defendant-Appellant.**

**No. 19849.**

United States Court of Appeals,
Sixth Circuit.

June 24, 1970.

David K. Purkey, Columbus, Ohio, for appellant; William J. Abraham, Columbus, Ohio, on brief.

James F. Cook, Asst. U. S. Atty., Lexington, Ky., for appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before WEICK, PECK and BROOKS, Circuit Judges.

WEICK, Circuit Judge.

Lee was convicted by a jury in the District Court on two counts of an indictment which charged him in the first count with transporting a firearm in interstate commerce after having been convicted of a crime punishable by more than one year, 15 U.S.C. § 902(e) [1], and in the third count with possessing and concealing counterfeit money with intent to defraud, 18 U.S.C. § 472. He was sentenced to five years on each count, to run concurrently, from which judgment he appeals.

While stationed in Okinawa, Japan, with the United States Air Force, Lee was convicted in 1949 of rape and sodomy by a General Court Martial of the Air Force, and was sentenced to a term in excess of one year, which sentence was subsequently served in military prisons.

During May, 1968, Area Supervisor Baker, of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service, received a tip from an informant that Lee would at some time in the future be traveling from Columbus, Ohio, through Cincinnati, on his way to North Carolina, and that he would be carrying with him a firearm. The informant told Supervisor Baker that he

---

[1]. 15 U.S.C. § 902 was repealed by Pub.L. 90–351, Title IV, § 906, 82 Stat. 234 (June 18, 1968). The same crimes are now punishable under 18 U.S.C. § 922(a) (1), (c), (e)–(i).

would contact him or another agent on the exact day of the trip. Supervisor Baker told the Investigators serving under him that they would receive a call from an informant, who would not identify himself but who would be reliable, and that he would give them information concerning Lee upon which they were to act.

At 10:15 a. m. of June 12, 1968, Special Investigator Stocking received a call in his Cincinnati office from the informant. Although Baker was present, neither he nor anyone else listened in on the conversation. The informant told Stocking that Lee had left Columbus approximately thirty minutes before, driving a 1968 Buick Electra two-door hardtop with brown bottom and light-colored top, bearing Ohio license number 30197. The informant said that Lee was accompanied by one, Tommy Stilson, also known as Tommy Tucker, and that they would make a stop in Dayton, Ohio, where he would pick up "four articles" before proceeding farther.

The United States Commissioner was not available when the call was received, and the nearest Commissioner was some distance away in Lexington, Kentucky. The agents did not believe that they had adequate time in which to secure a warrant [2].

Surveillance was immediately set up on Interstate 75 which runs from Dayton to Cincinnati and into Kentucky. Supervisor Baker and Investigator Rowe observed the described car passing through Cincinnati at approximately one o'clock p. m. They followed the car into Kentucky where Investigator Stocking, in the company of Sergeant Pat Ryan of the Kenton County, Kentucky Police, also joined, following it in a police car. Sergeant Ryan turned on the siren and red light to signal Lee to the side of the road. When this occurred, a member of the Kentucky State Police who was travelling beside appellant in an unmarked car, observed the person on the passenger's side of the car, bend over. It was subsequently determined that Lee was driving and that Stilson was sitting on the passenger's side.

Investigators Rowe and Stocking immediately conducted a search of the trunk of the car which was owned by Lee. In the trunk they discovered among other things, a suitcase belonging to Lee which contained a loaded .38 caliber "Colt" revolver. Investigator Rowe searched the interior of the car and discovered four counterfeit $100-Federal Reserve Notes under the floormat on the passenger's side of the car.

Prior to and again during the trial a motion was made by Lee to suppress the use of the revolver and the counterfeit bills as evidence, which motion was denied. In a voir dire hearing on the motion, Supervisor Baker, who was the only person who knew the identity of the informant, testified that he (Baker) had told the investigators "to act upon the information because it would be reliable." Agent Baker did not testify that he had relied on this informant previously, or what the circumstances were which led him to believe that the information was credible.

The District Court ruled that Baker knew that the informant was reliable. The evidence was permitted to be introduced over the continuing objection of Lee.

The testimony of Robert Trowbridge was also admitted over objection. Trowbridge testified that he had previously owned the revolver and that it had been stolen from his sporting goods store on December 20, 1966.

Lee contends that he has not been convicted of a crime punishable by imprisonment for a term exceeding one year within the meaning of 15 U.S.C. § 902(e), which provides as follows:

> "It shall be unlawful for any person who is under indictment or who

---

**2.** The drive from Columbus to Cincinnati takes approximately two hours. Actually it took Lee approximately three and one-half hours on this occasion, because he stopped in Dayton on the way.

has been convicted of a crime punishable by imprisonment for a term exceeding one year or who is a fugitive from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

■ He argues that a court martial is not a part of the judicial branch of the Federal Government and, therefore, judgments rendered by military tribunals are not within the contemplation of the statute. This contention is without merit.

The only case directly in point involved the defendant Lee [3]. United States v. Lee, 227 F.Supp. 450 (D.N.D., 1964), held that a court martial conviction does come within the meaning of 15 U.S.C. § 902. We see no reason to construe the statute differently than did the District Court in that case.

The language of the statute is not limited to judgments rendered by Article III courts. Courts martial are authorized under Article I of the Constitution. Osborn v. United States, 322 F.2d 835, 838–839 (5th Cir. 1963); cf. United States ex rel. Thompson v. Price, 258 F.2d 918, 922 (3rd Cir. 1958), cert. denied, 358 U.S. 922, 79 S.Ct. 295, 3 L.Ed.2d 241.

■ In cases in which courts martial have jurisdiction, their judgments are to "be accorded the finality and conclusiveness as to the issues involved which attend the judgments of a civil court in a case of which it may legally take cognizance." Grafton v. United States, 206 U.S. 333, 345, 27 S.Ct. 749, 51 L.Ed. 1084 (1907).

Jurisdiction of the military court is not challenged in this case. The finding of the court martial that Lee had committed a crime, and the judgment of sentence in excess of one year, are entitled to the conclusiveness of a judgment of an Article III court.

Gubbels v. Hoy, 261 F.2d 952 (9th Cir. 1958), relied on by Lee, does not dictate a result different from the one we have reached. That case is inapposite because its holding that a sentence of a court martial could not be the basis of deportation under 8 U.S.C. § 1251(a)(4), was based on the fact that administratively it is impossible for a court martial to comply with all the requirements of that Act. No such difficulty is present here. The military court has decided Lee's guilt and has rendered judgment. Lee stands "convicted of a crime punishable by imprisonment for a term exceeding one year * * *."

■ Lee argues that it was error for the District Court to deny his motion to sever Count I of the indictment, charging transportation of the firearm, from Count III of the indictment, charging possession of counterfeit money. Rule 8 (a) of Federal Rules of Criminal Procedure permits joinder of separate offenses in an indictment if they "are based on the same act or transaction * * *." Rule 14, however, provides for severance of separate counts of an indictment where the defendant can demonstrate that prejudice will result from a joint trial [4]. The granting of a motion for severance under rule 14 is within the sound discretion of the trial judge and his ruling will not be reversed unless there is a showing of abuse of discretion. See, e. g., United States v. Vida, 370 F.2d 759 (6th Cir. 1966); cert. denied, 387 U.S. 910, 87 S.Ct. 1695, 18 L.Ed.2d 630

---

3. The record does not disclose whether Lee was convicted in that case.

4. Fed.R.Crim.P. 14 provides:
  "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial."

(1967); Anderson v. United States, 270 F.2d 124 (6th Cir. 1959).

Lee contends that he wanted to testify on the count charging possession of counterfeit money but not on the charge of interstate transportation of the firearm, which would have permitted the Government to cross-examine him concerning his previous conviction for rape and sodomy. The evidence of the previous conviction was not admissible with respect to Count III, and therefore he claims that he was prejudiced because he had to decide not to testify on Count III. We disagree with Lee's contention that the District Court abused its discretion in denying the motion for severance.

This case is not like the cases where the court held that it was an abuse of discretion not to grant a severance of trials of crimes arising out of totally separate transactions. See, e. g., Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). The crimes contained in the counts of the indictment here were not "clearly distinct in time, place and evidence." Cross v. United States, 118 U.S.App.D.C. 324, 335 F.2d 987, 989 (1964). Both counts in the indictment were the result of a common occurrence, i. e., the search of Lee's car after it crossed the Ohio-Kentucky border.

In addition to the fact of a common occurrence, the evidence in this case was uncomplicated and the jury, under proper instructions, would have no difficulty in considering the evidence only in connection with the crime of which it was probative. We note that there was no objection made to the form of the instructions given by the District Judge.

We find that there was no abuse of discretion in denying the motion under Rule 14.

Lee contends that it was prejudicial error to admit the testimony of Trowbridge that the revolver had been stolen from his gunshop approximately one and one-half years prior to its transportation in interstate commerce. The fact of the theft of the gun was not relevant to any of the allegations in the indictment. As we recently held: " . . [I]t is a fact which is likely to induce the jury to speculate as to other bad acts which the accused may have committed." United States v. Laker, 427 F.2d 189, 190 (6th Cir. 1970).

Although introduction by the Government of such evidence was patently improper[5], nevertheless we are of the opinion that it was harmless error in the present case. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See United States v. Laker, *supra*. The evidence adduced shows beyond a reasonable doubt that the federal agents observed Lee crossing state lines; that Lee made no stops in Kentucky prior to his arrest; and that Lee had possession of the gun when he was apprehended. The conclusion is inescapable that he had transported the gun in interstate commerce.

Lastly, Lee contends that there was no showing of probable cause upon which the warrantless arrest and incident search and seizure could be predicated.

The Fourth Amendment requires that arresting officers first obtain a warrant to make an arrest or search and seizure, and that a warrant will issue only upon a showing of probable cause. Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). If circumstances require, a valid arrest without a warrant can be made if the arresting officer has probable cause to believe that a crime is being committed. A search and seizure incident to the arrest is valid. *E. g.*, Draper v. United States, 358 U.S. 307, 310–311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

An inquiry into the existence of probable cause is the same, whether

---

5. It comes close to being misconduct of counsel and ought not to be tolerated by the court.

made by a magistrate on application for a warrant or made by a court after an arrest or search and seizure without a warrant. See Spinelli v. United States, 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Where an informant supplies the basis for probable cause, the probative value of his report must be independently determined. 393 U.S. at 415, 89 S.Ct. 584; see Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The burden of showing probable cause is on the Government. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). In our opinion, the Government has not carried its burden of producing adequate evidence from which the District Court could conclude that there was probable cause for an arrest in this case.

Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), is instructive. In that case, police, without a warrant, arrested a known gambler upon the tip of an informant that he would be in a certain location at a certain time carrying on illegal gambling activities. *Id.* at 97–98, 85 S.Ct. 223 (dissenting opinion). A search of defendant's person led to the discovery of gambling slips. During a hearing on a motion to suppress, the arresting officer testified that he knew the informant, but he did not divulge the identity of the informant nor did he give any of the surrounding circumstances which would indicate the reliability of this information. In holding that there was no probable cause for the arrest, the Supreme Court distinguished Draper v. United States, *supra,* on the ground that in *Draper* the informant not only gave very specific information concerning the alleged illegal activity of the suspect, but the arresting officer testified that the informant had given reliable information on numerous occasions in the past. The Court said:

"* * * [I]t was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible." 379 U.S. at 97, 85 S.Ct. at 229.

In the instant case there was no showing that the informant was known to be reliable. Supervisor Baker did not testify that he had been given reliable information in the past by this informant, nor did he testify as to the circumstances of such information so that his conclusions could be evaluated by the Court. See Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Draper v. United States, *supra,* 358 U.S. at 309, 79 S.Ct. 329; United States v. Barnett, 407 F.2d 1114, 1116 (6th Cir. 1969), cert. denied, 395 U.S. 907, 89 S.Ct. 1748, 23 L.Ed.2d 219; United States v. Freeman, 382 F.2d 272, 273 (6th Cir. 1967).

▆ All that Supervisor Baker testified was that he knew the informant and that he had told the investigators to act on any information which the informer gave them because it would be reliable. This is clearly not an adequate basis from which the Court could conclude that there was probable cause. See Beck v. Ohio, *supra,* 379 U.S. at 94, 85 S.Ct. 223; Aguilar v. Texas, *supra,* 378 U.S. at 109, 84 S.Ct. 1509.

▆ Nor does the fact that the information given by the informant in this case turned out to be accurate, establish probable cause. In Spinelli v. United States, *supra,* the defendant, a known gambler under surveillance by the FBI, had been observed entering a certain apartment which had two telephone numbers. A tip was received from an informant that the defendant was using two telephones with certain numbers in a certain apartment for disseminating wagering information. The Court held that there was no probable cause, because his travels to and from this apartment and the existence of the two telephones could not be taken as "bespeaking gambling activity * * *." 393 U.S. at 414, 89 S.Ct. at 584.

In the present case it is clear that if there had been no tip from the informant, who was not shown to be reliable,

there was no activity which would bespeak illegal conduct. The fact of Lee's driving a car from Ohio to Kentucky with another man, is innocuous. If, of course, the informant was demonstrably entitled to be credited, then the fact that he was able to report the name of the passenger, the license number and description of the automobile, along with the time of departure, plus the stopover in Dayton (which is slightly out of the way if one is traveling from Columbus to Cincinnati), would have given the agents probable cause to believe that the information that Lee was carrying a gun was accurate and that he was, therefore, engaged in violating the law. United States v. Barnett, *supra.* On remand, the Government will have an opportunity to offer proof as to the reliability of the informant.

During pendency of this appeal, a motion for a new trial on newly discovered evidence was filed in the District Court, and an order was entered by the Court determining that the Court was without authority to pass on it since an appeal had been taken. The Court directed the Clerk of the District Court to forward to the Court of Appeals a copy of the motion.

The District Court erred in ruling that it was without jurisdiction to pass on the motion. It had jurisdiction to hear the motion and to deny it. If the District Court was of the view that the motion should be granted, it should have applied to this Court for an order of remand for that purpose. United States v. West, 170 F.Supp. 200 (N.D.Ohio, 1959), and cases cited therein under Rule 33 Fed.R.Crim.P., aff'd 274 F.2d 885 (6th Cir. 1960), cert. denied, Haug v. United States, 365 U.S. 811, 81 S.Ct. 688, 5 L.Ed.2d 691 (1961), rehearing denied, 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864. The motion can be considered on remand.

Because we find no reversible error in the trial itself, justice would not be served by reversing the judgment and granting a new trial. Cf., Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); United States v. Lloyd, 400 F.2d 414 (6th Cir. 1968).

We remand with instructions to the District Court to conduct a hearing consistent with this opinion to determine whether probable cause for the arrest existed, and to hear and determine the motion for a new trial on newly discovered evidence. The District Court shall report to us its findings on the issue of probable cause for the arrest, and we reserve jurisdiction to consider them.