PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 13-4302

———————

UNITED STATES OF AMERICA,

                   Plaintiff - Appellee,

        v.

FREDDIE GRANT,

                   Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Cameron McGowan Currie, Senior
District Judge.   (3:12-cr-00729-CMC-1)

———————

Argued: March 26, 2014                 Decided:  June 3, 2014

———————

Before TRAXLER, Chief Judge, FLOYD, Circuit Judge, and HAMILTON,
Senior Circuit Judge.

———————

Affirmed by published opinion.   Judge Floyd wrote the opinion,
in which Chief Judge Traxler and Senior Judge Hamilton joined.

———————

**ARGUED:** Joshua Snow Kendrick, KENDRICK & LEONARD, P.C.,
Greenville, South Carolina, for Appellant.   Stacey Denise
Haynes, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South
Carolina, for Appellee.   **ON BRIEF:** Beth Drake, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia,
South Carolina, for Appellee.

———————

FLOYD, Circuit Judge:

A jury found Appellant Freddie Grant guilty of being a felon in possession of ammunition. The district court classified Grant as an armed career criminal, in part due to two general court-martial convictions for violent crimes, and calculated his Sentencing Guidelines range accordingly. Grant now appeals, contending that we should vacate his sentence because the district court erred by using the court-martial convictions to classify him as an armed career criminal. For the reasons we outline below, we affirm.

I.

On August 18, 2012, the Richland County Sheriff's Department (RCSD) in Columbia, South Carolina, received a report that a fifteen-year-old girl had disappeared. RCSD identified Grant as a suspect in the disappearance and obtained a search warrant for his home in Elgin, South Carolina. When RCSD and the Elgin Police Department executed the search warrant, investigators seized two boxes of ammunition, which federal law prohibited Grant—a felon—from possessing. See 18 U.S.C. §§ 922(g)(1); 924(a)(2), (e). On August 26, 2012, the Federal Bureau of Investigation arrested Grant for being a felon in possession of ammunition, and a grand jury ultimately returned an indictment charging him with the same offense.

2

A jury convicted Grant on January 15, 2013. A probation officer prepared a Presentence Investigation Report (PSR), which identified Grant as an armed career criminal due to two convictions for violent felonies and one conviction for possession with intent to distribute cocaine. The drug conviction is not at issue in this case. The two violent felony convictions occurred in 1980, while Grant was in Korea serving in the Army. First, a general court-martial[1] convicted Grant of assault by inflicting grievous bodily harm, in violation of UCMJ article 128, after he cut a fellow servicemember on the face with a razor blade. See 10 U.S.C. § 928(b)(2). Second, a general court-martial convicted Grant of kidnapping, in violation of UCMJ article 134. See id. § 934 (catch-all provision). Grant's kidnapping conviction stemmed from an incident during which he overtook two military officials who were transporting him while he was in custody for the assault. Grant wrested an assault rifle from one of the officials,

---

[1] The Uniform Code of Military Justice (UCMJ) provides for three types of courts-martial: general, special, and summary. 10 U.S.C. § 816. A general court-martial is the highest court level and has jurisdiction to try individuals for all crimes outlined in the UCMJ, including capital crimes. Id. § 818. Special courts-martial can try individuals for noncapital UCMJ offenses but are limited in the types of punishment they may impose. For example, special courts-martial cannot require dishonorable discharge. Id. § 819. Summary courts-martial adjudicate relatively minor offenses and have jurisdiction over enlisted individuals, not military officers. Id. § 820.

kidnapped the officials at gunpoint, and forced them to drive to another location. Due to these convictions, Grant was dishonorably discharged from the Army and sentenced to eight years and nine months' hard labor at the United States Disciplinary Barracks in Fort Leavenworth, Kansas.

The PSR assigned Grant an offense level of 33. Due to Grant's classification as an armed career criminal, his criminal history category increased from I to IV. These calculations resulted in a Sentencing Guidelines range of 188 to 235 months' imprisonment. After the district court considered the 18 U.S.C. § 3553(a) factors, it sentenced Grant to 212 months' imprisonment.

II.

Pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and section 4B1.4 of the Guidelines, an individual who violates § 922(g) and has "three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" qualifies as an armed career criminal. 18 U.S.C. § 924(e)(1) (emphasis added). Grant contends that his court-martial convictions do not constitute predicate convictions for enhancements under the ACCA because a general court-martial does not constitute "any court." We have

4

jurisdiction under 28 U.S.C. § 1291 and review de novo the legal conclusions underpinning the district court's determination that Grant is an armed career criminal. See United States v. Davis, 689 F.3d 349, 355 (4th Cir. 2012) (per curiam).

In support of his argument that a general court-martial is not "any court" under the ACCA, Grant relies primarily on the Supreme Court's decision in Small v. United States, 544 U.S. 385 (2005). Small addressed whether a conviction in a Japanese court could serve as the felony underlying a conviction pursuant to 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person . . . who has previously been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. See 544 U.S. at 387. Because the ACCA provision at issue in this case invokes "any court referred to in section 922(g)(1)," 18 U.S.C. § 924(e), courts' interpretations of § 922(g)(1) are relevant here.

The Court began its analysis in Small by noting that "even though the word 'any' demands a broad interpretation, we must look beyond that word itself" to ascertain the meaning of "any court." 544 U.S. at 388. To frame this linguistic inquiry, the Court relied on "the legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." Id. at 388-89. The Court then explained how "foreign convictions differ from domestic convictions in

5

important ways." Id. at 389. First, other countries may criminalize conduct that is legal in the United States. Id. Second, foreign legal systems may be "inconsistent with an American understanding of fairness." For example, they may treat men and women differently in important respects. Id. at 389-90. And third, foreign courts may punish conduct more severely than domestic courts would punish the same conduct. See id. at 390. Due to these potential differences, the Court concluded that foreign courts "somewhat less reliably identif[y] dangerous individuals," and, therefore, determined that utilizing foreign convictions under § 922(g)(1) contradicted that provision's aim. See id.

In addition to relying on these differences between foreign and domestic convictions, the Court noted that other provisions in the same statutory scheme as § 922(g)(1) demonstrated that Congress intended to limit "any court" to domestic courts. See id. at 391-92. For example, § 921(a)(20)(A) allows individuals to possess guns after they commit "Federal or State" antitrust or business regulatory offenses. Id. at 391. The Court reasoned that reading "any court" to include foreign courts would allow individuals convicted of domestic antitrust or business regulatory crimes to possess guns but prevent individuals with equivalent foreign convictions from doing so. Id. Due to the differences between foreign and domestic courts,

6

and because provisions such as § 921(a)(20)(A) illustrated that Congress did not intend for § 922(g)(1) to encompass foreign convictions, the Court held that "any court" did not include foreign courts. Id. at 394.

Grant contends that some of the same reasons that led the Supreme Court not to view a foreign court as "any court" under § 922(g)(1) support not considering a general court-martial as "any court" under the ACCA. Specifically, Grant argues that, just as there are differences between foreign and domestic courts that justify not precluding individuals from possessing firearms based on their foreign convictions, there are also differences between general courts-martial and civilian courts that warrant not classifying individuals as armed career criminals due to their military convictions. In essence, Grant contends that these differences render courts-martial, like foreign courts, "inconsistent with an American understanding of fairness." Small, 544 U.S. at 389.

Military courts draw their constitutional authority from Article I rather than Article III. See O'Callahan v. Parker, 395 U.S. 258, 261-62 (1969), overruled on other grounds by Solorio v. United States, 483 U.S. 435 (1987). A military officer must convene a general court-martial, over which a military officer presides. 10 U.S.C. §§ 822(a); 825(a)-(b). "Substantially different rules of evidence and procedure apply

7

in military trials." O'Callahan, 395 U.S. at 264. Notably, a general court-martial—in contrast to a civilian jury—is not necessarily comprised of the accused's peers. When a general court-martial tries an enlisted servicemember on active duty, the court-martial need not include enlisted servicemembers unless the accused so requests. Even then, the UCMJ requires that enlisted servicemembers comprise only one-third of the panel. See 10 U.S.C. § 825(c)(1). Commissioned officers on active duty are always eligible to serve on courts-martial. Id. § 825(a). Courts-martial in noncapital cases may convict if two-thirds of the panel members agree, id. § 852(b), but, like civilian courts, they must find the accused guilty beyond a reasonable doubt, id. § 851(c)(1). The Supreme Court attributed these differences between courts-martial and civilian courts to the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," rendering the "trial of soldiers to maintain discipline . . . merely incidental to an army's primary fighting function." See O'Callahan, 395 U.S. at 262-65 (quoting United States ex rel. Toth v. Quarles, 350 U.S. 11, 17-18 (1955)).

Despite these contrasts between courts-martial and civilian courts, two of our sister circuits have held that courts-martial constitute courts under the ACCA and § 922(g)(1). In United States v. Martinez, 122 F.3d 421 (7th Cir. 1997), the Seventh

8

Circuit determined that a court-martial was a court for purposes of the ACCA for three reasons. First, relying on the dictionary definition of the word "any," the court concluded that "the adjective 'any' expand[ed] the term 'court'" to encompass all courts, including courts-martial. See id. at 424. But, as we explain above, Small now forecloses this line of reasoning because, in that case, the Supreme Court viewed "any" as an ambiguous term. Second, the Seventh Circuit explained that the Sentencing Guidelines provide that "[s]entences resulting from military offenses are counted if imposed by a general or special court[-]martial." Id. (quoting U.S.S.G. § 4A1.2(g)). However, that Guidelines provision applies to the instructions for computing a defendant's criminal history, not to the instructions for determining which defendants qualify as career offenders.[2] See U.S.S.G. § 4A1.2. Third, the court relied on the Sixth Circuit's decision in United States v. Lee, 428 F.2d 917 (6th Cir. 1970). Martinez, 122 F.3d at 424. In Lee, the court explained that the judgments of courts-martial "are to 'be accorded the finality and conclusiveness as to the issues

---

[2] At the time that the Supreme Court decided Small, the same provision specified that "[s]entences resulting from foreign convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." Accordingly, Small would have been unnecessary if these criminal history principles applied to § 922(g).

9

involved which attend the judgments of a civil court in a case of which it may legally take cognizance.'" 428 F.2d at 920 (quoting Grafton v. United States, 206 U.S. 333, 345 (1907)).

The Ninth Circuit concluded that courts-martial qualify as courts under § 922(g)(1) in United States v. MacDonald, 992 F.2d 967 (9th Cir. 1993). Like the Seventh Circuit, the Ninth Circuit relied on Lee for the proposition that general courts-martial are within the purview of "any court." See id. at 969-70. The Ninth Circuit also based its decision on cases, which Small overruled, holding that foreign convictions can support felon-in-possession charges. Id. at 968. In sum, Small diminishes the degree to which we can turn to Martinez and MacDonald for guidance as we decide this case.

Because the Supreme Court indicated that "any court" has an ambiguous meaning, we may rely on other signals of congressional intent, such as the legislative history, to interpret the ACCA. See CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 53 (4th Cir. 2011). When Congress passed the ACCA, it noted that "[s]tatistics indicate that nearly 25 million American households—3 out of every 10—were affected by crimes involving theft or violence. It has also become increasingly clear that a large percentage of these crimes are committed by a very small percentage of repeat offenders." H.R. Rep. No. 98-1073, at 1,

10

<u>reprinted in</u> 1984 U.S.C.C.A.N. 3661, 3661.[3] Congress enacted the ACCA "to increase the participation of the federal law enforcement system in efforts to curb armed, habitual (career) criminals." <u>Id.</u> The Supreme Court summarized how the ACCA achieves Congress's goal in <u>Begay v. United States</u>:

> As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun. In order to determine which offenders fall into this category, the Act looks to past crimes. This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.

553 U.S. 137, 146 (2008) (citation omitted). Including court-martial convictions for violent felonies in the armed career criminal tabulation furthers Congress's objective of identifying and deterring career offenders.

---

[3] This legislative history stems from an earlier incarnation of the statute, which imposed stiffer penalties when the defendant had three previous convictions for robbery or burglary. <u>See</u> Armed Career Criminal Act of 1984, Pub. L. No. 98-473, § 1802, 98 Stat. 1937. It did not premise armed career criminal classification on violent felonies or drug offenses. However, the same concerns that motivated the original statute spurred Congress's decision to expand what crimes could serve as predicate offenses under the ACCA. <u>See</u> <u>Taylor v. United States</u>, 495 U.S. 575, 587-88 (1990) ("[T]hroughout the history of the enhancement provision, Congress focused its efforts on career offenders—those who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at least a potential threat of harm to persons.").

11

The concerns that the Supreme Court raised in Small do not compel us to deviate from the outcome that legislative history supports. Grant has not highlighted any ways in which using violent felony convictions by general courts-martial to classify individuals as armed career criminals would conflict with the ACCA's provisions. Although Grant correctly identifies several dissimilarities between courts-martial and civilian courts, these differences do not rise to the level of the contrasts between domestic and foreign courts that Small highlighted. For instance, in support of its conclusion that foreign legal systems may be "inconsistent with an American understanding of fairness," the Supreme Court quoted a report from the U.S. Department of State "describing failures of 'due process' and citing examples in which 'the testimony of one man equals that of two women.'" Small, 544 U.S. at 389-90. In light of the extreme examples the Court used and the lack of incongruity between court-martial convictions and the statutory scheme at issue, we doubt the Supreme Court would interpret Small to prevent court-martial convictions from qualifying as predicate offenses under the ACCA. We consequently decline to do so.

III.

For these reasons, we agree with the district court's decision to use Grant's general court-martial convictions to

12

classify him as an armed career criminal.  We therefore affirm Grant's sentence.

<u>AFFIRMED</u>