**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Harold David JORDON,**
**Defendant-Appellee.**

No. 75–1114.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1975.

Decided March 1, 1976.

Rehearing Denied May 4, 1976.

Eugene E. Siler, Jr., U. S. Atty., Richard E. Duerr, Jr., Lexington, Ky., for plaintiff-appellant.

David B. Whites, Robert Carter, Louisa, Ky., for defendant-appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

PER CURIAM.

This is an appeal by the Government from the granting of Appellee's motion to suppress the introduction of a shotgun seized from his truck. Appellee was charged with violating 26 U.S.C. sections 5861(d) and 5871 (1970), for possession of an unregistered firearm, and 26 U.S.C. sections 5861(j) and 5871 (1970), for interstate transportation of an unregistered firearm. After granting the motion to suppress, the District Court dismissed the indictments against Appellee.

On the afternoon of January 27, 1974, the Police Department of Louisa, Kentucky received a telephone call from a woman who identified herself as Appellee's wife. She told the police that her husband, his brother and a cousin had a quantity of marijuana in Fort Gay, West Virginia. She also informed police that he drove a blue Ford logging truck. The police dispatcher radioed the information to units on patrol. Shortly after midnight, Sheldon Preece, a patrolman, spotted a truck matching the description proceeding slowly into the city via the bridge from Fort Gay. He radioed Randal Noble, a Kentucky State Policeman, to inform him that he had located the vehicle and required assistance. Patrolman Preece stopped the truck and requested that Appellee produce an operator's permit. Appellee left the vehicle and presented his driver's license to the officer. From his appearance and the smell of alcohol on his breath, the officer concluded that Appellee was intoxicated. Meanwhile Trooper Noble, who had been across the street, crossed to Appellee's truck and began a warrantless search. When he opened the door on the passenger side he observed the barrel of a shotgun protruding from under the seat. No marijuana was discovered either in the truck or on the person of Appellee. Appellee was charged at the scene with driving while intoxicated. Subsequently, federal authorities charged him with the firearm offenses.

■ Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment, except in "a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). The District Court concluded that the Government had failed to establish that the search in this case fell within any of the exceptions to the warrant requirement. Specifically, the Court found that the search could not be justified under the exception for a search of an automobile on the open highway, *see Carroll v. United States,* 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543, 548 (1925), or as incident to Appellee's arrest, *see United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ In order to qualify a search under the automobile exception to the warrant requirement, the officers conducting the search must have probable cause to believe that the search will turn up evidence of the offense they are investigating. *Almeida-Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 2537, 37 L.Ed.2d 596, 600 (1973). *See also Manning v. Jarnigan,* 501 F.2d 408 (6th Cir. 1974). They must have more than a "bare suspicion" that the evidence they seek is in the place to be searched. *Brinegar v. United States,* 338 U.S. 160, 175 (1949). Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States, supra,* 267 U.S. at 162, 45 S.Ct. at 288, 69 L.Ed. at 555.

■ Probable cause may be based upon hearsay information obtained from an informant. *See e. g., Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723, 728 (1964). Even where the tip alone could not support a finding of probable cause, information gathered through independent investigation which substantially verifies the tip may satisfy the requirement. *See Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 643 (1969); *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959).

The Government contends that probable cause to conduct a warrantless search of Appellee's vehicle arose at that point in time when Patrolman Preece visually corroborated the information supplied by Appellee's wife. Although the Government does not rely on the tip alone to establish probable cause, the information contained therein is an essential part of its claim that the search was based on probable cause. Accordingly, the probative value of the tip must be assessed according to the standards established in *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1513, 12 L.Ed.2d at 728. *See Spinelli v. United States, supra,* 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643. If the tip is found inadequate under *Aguilar,* we will then consider any corroborative evidence offered by the Government to supply the indicia of reliability and credibility missing in the tip standing alone. *Id.*

In *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1513, 12 L.Ed.2d at 728, the Supreme Court devised a two-pronged test for assessing the probative value of an informant's information: there must be some indication of the underlying circumstances from which the informant concluded that the facts are as he says they are, and there must be some statement of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. Neither of these standards was met in this case. There is nothing in the record which would allow the court to independently evaluate the probative value of the informant's report. *See Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 1034, 28 L.Ed.2d 306, 310 (1971). *See also United States v. Lee,* 428 F.2d 917 (6th Cir. 1970).[1]

■ The tip itself reveals very little. Officer Preece supplied the only detailed

---

1. In cases where there have been warrantless searches and seizures, courts serve the same

function as magistrates in determining probable cause and are guided by the same stan-

account of the information given by the informant in the record:

Q Prior to your pulling over Mr. Jordan, had you ever received any information concerning him?

A I did. When I went on duty the dispatcher informed me that him, his brother and a cousin were supposed to have some marijuana over in Fort Gay, West Virginia, and had a blue Ford log truck.

Q And were you advised of the source of that information?

A I was.

Q And how were you advised? How were you told about that?

A They advised that his wife had called the police station and informed them of his possession of marijuana.

Record at 17–18.

An examination of the tip, standing alone, does not disclose a substantial basis for crediting the information supplied the police. Unlike *United States v. Harris,* 403 U.S. 573, 579, 581, 91 S.Ct. 2075, 2079, 2080, 29 L.Ed.2d 723, 731, 732 (1971), and *Jones v. United States,* 362 U.S. 257, 267–68, 80 S.Ct. 725, 734–735, 4 L.Ed.2d 697, 705–706 (1960), the tip in this case does not purport to recount personal and recent observations of the informant.[2] All the allegations contained in the tip are conclusory. See *Whiteley v. Warden, supra,* 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. There is no indication how the informant came by the information. Had she personally observed Appellee with marijuana? Had Appellee told her he possessed marijuana? If her source was indirect, was it reliable? *See Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643. Nor does the fact that the caller identified herself as Appellee's wife add anything to the credibility or the reliability of the information. There is no record that the police attempted to verify her identity or to inquire into the source of her information, steps which prudent police procedures would dictate.[3] This was also not a case where the police have had prior dealings with an informer they deem "reliable." *See United States v. Harris, supra,* 403 U.S. at 580, 91 S.Ct. at 2080, 29 L.Ed.2d at 731. *See also United States v. Lee, supra* at 922; *United*

dards. *Whiteley v. Warden, supra,* 401 U.S. at 566, 91 S.Ct. at 1035, 28 L.Ed.2d at 312. *See also Spinelli v. United States, supra,* 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644; *United States v. Lee, supra* at 921–22. *See* discussion at note 5 *infra.*

2. In *Harris* the informant gave a federal tax investigator a detailed account of the suspect's dealings in illegal whiskey with himself and others over a two-year period including a purchase within the past two weeks. The tip included an accurate description of the premises to be searched. 403 U.S. at 575, 91 S.Ct. at 2077, 29 L.Ed.2d at 729. In *Jones* narcotics officers received information from an unnamed informant that he had purchased narcotics from the suspect in the suspect's apartment "on many occasions," most recently the day before the warrant was applied for, and that there was "a ready supply of heroin" on the premises. 362 U.S. at 267–68, 80 S.Ct. at 734–735, 4 L.Ed.2d at 705–706. In this case there is no indication from the tip of the informant's source or how recently she obtained the information.

3. The conduct of the investigation of this case stands in marked contrast to that recently upheld by this court in *United States v. Jackson,* 525 F.2d 1025 (6th Cir., 1975) (per curiam). In *Jackson* the Knoxville police department received a telephone call from Mike Lewellyn in which he stated that there was a car in his driveway with a Georgia license, "and they had guns and they wouldn't leave the driveway." Two officers responded and interviewed Debbie Lewellyn. They put out a bulletin to pick up a green Chevy Camaro with a black hood, containing four males who had some "sawed-off shotguns" and who were heading toward Tyson Park. Another Knoxville officer observed a car fitting the description at the location referred to and, accompanied by another officer, made the stop and search. We agree[d] with the District Court that there was probable cause to believe that a felony was being committed prior to the stop and search.

The specificity of the information supplied the police, the positive identification of the caller, the verification of his information by officers conducting a follow-up investigation, and the detailed corroboration of the facts by the arresting officers, clearly distinguish this case from the one at bar.

*States v. Freeman,* 382 F.2d 272 (6th Cir. 1967). As far as the police knew, the caller could have been anyone out to satisfy a grudge against Appellee. In any event, the identity of the caller does not alter the conclusory nature of the tip or remedy the complete absence of any information upon which a court could make an independent judgment of its probative value.[4] *See generally Whiteley v. Warden, supra,* 401 U.S. at 564–65, 91 S.Ct. at 1034–1035, 28 L.Ed.2d at 310–311; *United States v. Lee, supra* at 922.

In the absence of underlying circumstances detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that a court may determine that the informant is relying on something more than casual rumor. *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643. Here the information contained in the tip was quite sparse. The police were told that Appellee was in possession of marijuana, but there is no mention of the quantity involved. The tip stated that the marijuana was in Fort Gay, West Virginia, without further specification as to its location. The informant told police that Appellee drove a blue Ford logging truck, but there was nothing in the record to indicate that the truck was to be used to transport marijuana.[5]

The testimony of the arresting officer, while corroborative of some details of the informant's information, could not corroborate the essence of the tip, that Appellee was engaged in committing a crime. Officer Preece testified that he stopped Appellee's truck because it fit the description broadcast by the dispatcher and because it was being driven from the direction of Fort Gay.[6] Nothing in the officer's testimony was inconsistent with completely innocent behavior. At most it verifies that the caller knew the type of truck that Appellee drove which, at some point in the day, would be across the river in West Virginia. The officer's observations at the scene, viewed apart from the tip, gave no suggestion that Appellee was engaged in committing a crime.

This situation closely parallels that confronted by the Supreme Court in *Whiteley v. Warden, supra.* In that case Justice Harlan, speaking for the Court, summarized the proper role of corroborative testimony in curing deficiencies in an informant's report:

> This Court has held that where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). See *Spinelli*

---

**4.** Similarly, the fact that the officer received the information from the police dispatcher does not add to its probative value. *Whiteley v. Warden, supra,* 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313.

**5.** In determining whether a search was based on probable cause, a court will only consider evidence disclosed in the record. *See Whiteley v. Warden, supra* at 565 n. 8, 91 S.Ct. at 1035, 28 L.Ed.2d at 311; *Aguilar v. Texas, supra,* 378 U.S. at 109, n. 1, 84 S.Ct. at 1511, 12 L.Ed.2d at 725. This does not mean that courts will not consider reasonable inferences from the facts in the record, merely that the Government has the burden of presenting adequate facts in the record to support the inferences sought to be drawn. *Cf. United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951). The Supreme Court underscored the importance of providing a judi-

cial body with a sufficient factual basis for evaluating the conduct of law enforcement officers in *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*See also Gerstein v. Pugh,* 420 U.S. 103, 112–13, 95 S.Ct. 854, 862, 43 L.Ed.2d 54, 64 (1975).

**6.** Record at 17.

*v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in Draper itself, were in the process of committing the felony.* See the opinions of the Court and that of Mr. Justice White concurring in *Spinelli v. United States, supra,* and p. 423, 89 S.Ct. p. 592. In the present case, the very most the additional information tended to establish is that either Sheriff Ogburn, or his informant, or both of them, knew Daley and Whiteley and the kind of car they drove; the record is devoid of any information at any stage of the proceeding from the time of the burglary to the event of the arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime. *Spinelli v. United States, supra; McCray v. Illinois, supra; Aguilar v. Texas, supra.*

401 U.S. at 567, 91 S.Ct. at 1036, 28 L.Ed.2d at 312 [Emphasis added].

Similarly, in *Spinelli v. United States, supra,* 393 U.S. at 418, 89 S.Ct. at 590, 21 L.Ed.2d at 645, the Court dismissed an argument that information gathered through F.B.I. surveillance of a suspected gambling operation tended to corroborate an informant's tip because the results of that investigation contained "no suggestion of criminal conduct when taken by themselves—and they were not endowed with an aura of suspicion by virtue of the informer's tip." [7]

■■■ Accordingly, we find the warrantless search initiated by the informant's tip was not based upon probable cause and therefore none of the exceptions to the warrant requirement are available. The judgment of the District Court is affirmed.

---

**7.** The Court in *Spinnelli* rejected the circular reasoning of the "totality of the circumstances" test applied by the Eighth Circuit. 393 U.S. at 410, 89 S.Ct. at 586, 21 L.Ed.2d at 640. Under that approach, the informant's tip gives a suspicious color to investigative reports detailing innocent-seeming conduct and con-

versely, the surveillance by law enforcement officers corroborates the informant's tip, thereby entitling it to more weight. *Id.* The self-fulfilling nature of this approach is precisely what we wish to avoid in our analysis of this case.