**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Cleveland Dean EDMOND,**
**Defendant-Appellee.**

**No. 76–2097.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 13, 1976.

Decided Feb. 10, 1977.

Rehearing and Rehearing En Banc
Denied March 22, 1977.

Philip M. Van Dam, U. S. Atty., Steven W. Rhodes, Detroit, Mich., for plaintiff-appellant.

Thomas E. Jackson, Federal Defender, F. Randall Karfonta, William L. Woodard, Detroit, Mich., for defendant-appellee.

Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.

WEICK, Circuit Judge.

The Government has appealed from an order of the District Court granting appellee Edmond's motion to suppress evidence seized by police officers of the Jackson Michigan Police Department in a warrantless search of his automobile. The evidence suppressed was a snub-nosed revolver. Its seizure resulted in an indictment charging Edmond with the receipt and possession of a firearm, Edmond having been previously convicted of a felony, in violation of 18 U.S.C. App. § 1202(a)(1), and charging Edmond with making a false statement in connection with the acquisition of the firearm, in violation of 18 U.S.C. § 922(a)(6).

The Jackson Michigan Police Department, in the early afternoon of May 9, 1975, received an anonymous telephone call on its "Tip" line which had been in service for about a year. The "Tip" line was established in order for citizens to call in, anonymously, information concerning criminal activity. The tip received was to the effect that a black man, named Cleveland Williams, was driving a green Pontiac Grand Prix automobile; that he had drugs and guns in his automobile, and was selling drugs in the area of the Franklin Homes Housing Project. This was a low-cost public housing complex located on Warwick Court, which is a dead end street. Cleveland Williams was further described as wearing a wide-brim hat.

Detective James Conant and Officer Robert Johnson, one being white and the other black, responded immediately to the call; they drove an unmarked car to the vicinity and stopped within about 100 yards of the housing project. They observed the area for about ten minutes, and observed the green Pontiac Grand Prix automobile parked in the street in front of the housing complex, and they saw three men standing next to the automobile, one of whom was wearing a wide-brim hat.

They also observed two transactions conducted by the man with the wide-brim hat. In the first transaction the man with the wide-brim hat reached into the automobile, took something out, and handed it to the individual who had approached him. This individual then in turn handed something to the man with the wide-brim hat. The second transaction was identical with the first, and was conducted with another man who drove up in an automobile.

Because of his experience with narcotic offenses Detective Conant was of the view that the man with the wide-brim hat was selling narcotics; however, because of the distance from which the surveillance was conducted the officers were unable to determine just what was exchanged.

After the second transaction the three subjects spotted the officers. The man with the wide-brim hat then opened the door of his car, took out an object which was wrapped in a white cloth, and transferred it to the trunk of his car. The officers immediately ended their surveillance and called for assistance. They approached the three subjects, identified themselves, and frisked the subjects for weapons. The subjects were not armed. The man with the wide-brim hat identified himself as Cleveland Edmond.

The officers explained to Edmond why they were there, but he denied involvement with drugs and guns; he was uncooperative

and used profanity. A crowd of about forty hostile people quickly assembled, and one woman commenced to shout and scream, and had to be quieted by the officers.

The officers searched the inside of the car and found nothing. They procured a key to the trunk of the car from Edmond, opened the trunk, and located the snub-nosed revolver wrapped in a white cloth. Edmond was the only person placed under arrest. One of the three original subjects had disappeared.

The sole issue in the case is whether the officers had probable cause to arrest Edmond and to search his automobile as incident to the arrest.

The tip in the present case was not from a reliable informer. It had to be verified. The verification was conducted by the surveillance by the officers. The surveillance verified the following information furnished by the tip:

1) the green Grand Prix Pontiac automobile;

2) the black man with the wide-brim hat;

3) the man was Cleveland Edmond; (The fact that he was identified as Cleveland Edmond, rather than as Cleveland Williams, was not material; at least his given name was correct.)

4) two transactions conducted by Edmond with others, whereby something was passed back and forth between them; and

5) the suspicious conduct of Edmond after he spotted the officers, when he opened the door of his automobile, took out an object wrapped in a white cloth and transferred it to the trunk of his car.

■ Hearsay may be a basis for a search warrant. *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Where the hearsay has been verified by the surveillance by the police officers there is no good reason why the evidence obtained in the search should be suppressed. Suppression leads only to the exclusion of reliable and relevant evidence which may be the only evidence available to convict a criminal of an offense which he has committed against society.

A very similar factual situation existed in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), where the informer Hereford gave information to narcotics agent Marsh. The Court stated at page 313, 79 S.Ct. at page 333:

And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a "fast" pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States, supra,* [338 U.S. (160), at 175 [69 S.Ct. (1302), at page 1310, 93 L.Ed. 1879]. Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]. [Footnote omitted]

In the present case, as in *Draper,* the officers had "reasonable grounds" to believe that the remaining, but unverified, bit of the tip, that the man with the wide-brim hat had drugs and guns with him, was true.

Although *Draper* involved a reliable informer, and in the present case the informer was anonymous, that situation was remedied when the information furnished by the tip had been verified and found by the police officers to be accurate.

When the police officers in the present case decided to and did investigate the tip, they were pursuing a "legitimate investigative sphere." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). They witnessed two transactions completed on the street in front of the housing complex by the man with a wide-brim hat. The officers necessarily could not have known whether Edmond had completed other transactions before they arrived.

When Edmond and the other two subjects spotted the officers, Edmond immediately opened the door of his car and transferred something covered with a white cloth to the trunk of his car. This was a highly suspicious circumstance which caused the officers to stop and frisk Edmond and the other two subjects. This procedure was approved in *Terry v. Ohio, supra.*

The right to be secure against unreasonable searches, as guaranteed by the Fourth Amendment, is based on the right of privacy. As well stated by Mr. Justice Frankfurter in *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949):

> The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society.

No right of privacy of Edmond's was invaded when he was conducting his transactions out in the open, on a public street, in front of a large low-cost public housing project, in plain view of anyone who desired to look. His transactions were in plain view of the police officers who witnessed them.

Furthermore, there were exigent circumstances which justified the search of the automobile. It was moveable. If it had not been searched, the automobile could have been quickly moved and the contraband therein, namely, the revolver removed.

■ It is settled that an automobile may be searched without a warrant under circumstances that would not justify the search of a house, provided there is probable cause to believe that the car contains articles that the officers are entitled to seize. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

In *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), an automobile belonging to the defendant was seized by state police from a public parking lot prior to the arrest of the defendant on a charge of murder. The officers took impressions of its tires and scrapings from its paint. The Supreme Court upheld the warrantless search and seizure of the car.

■ In the present case it is our opinion that the officers had probable cause to arrest Edmond and to search his automobile as incident thereto.

In *United States v. Jordon,* 530 F.2d 722 (6th Cir. 1976), the applicable rules are well set forth. In that case, however, not only was the tip inadequate but also verification of the tip was insufficient.

Each case must be determined on its own particular facts. The resolution of the issue is not always easy, as is indicated by divided decisions of the Supreme Court and of Appellate Courts as well. *See, e. g., Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Giacalone,* 541 F.2d 508 (6th Cir. 1976). *Cf., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (decided July 6, 1976).

It must be remembered that police officers unlike Judges and lawyers, are not trained in the nuances of the law of search and seizure, and often are confronted with emergencies which require quick action and which endanger their lives. Of course they

do know that illegal traffic in narcotics and guns is very dangerous to our society. It is the job of the officers to apprehend the law violators and to bring them to justice.

If Edmond is guilty of the offenses of which he has been charged, he ought not to be released, without trial, on any such technicality as existed in this case.

The judgment of the District Court is reversed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent and I would affirm the order of the district court suppressing the seized evidence. I would hold that the information provided in the anonymous tip, taken together with the observations made by the officers at a distance of one hundred yards and as they approached Edmond and the car, did not afford them probable cause to believe that the trunk of the car contained evidence of a crime.

The majority opinion is troublesome because it would permit government invasion of the privacy of persons solely on the basis of anonymous tips, made perhaps out of mischief or vengeance, just because innocent details might be corroborated by the observations of a police officer. As we observed in *United States v. Jordon*, 530 F.2d 722, 724 (1976), the Supreme Court has held that information from an informant may provide the basis for probable cause, but only if "there [is] some indication of the underlying circumstances from which the informant concluded that the facts are as he says they are, and there [is] some [proof] of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable." *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The tip in this case satisfied neither of these requirements.

In some cases, the detail related by an informant may permit a conclusion that the informant's knowledge is based on something more substantial than casual rumor. See *Spinelli, supra*, 393 U.S. at 416, 89 S.Ct. 584. In some cases, the police may have

had sufficient prior experience with the informant to enable them to conclude that he is reliable. In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), on which the majority opinion heavily relies, both of these elements were present. The information furnished in *Draper* by the informant Hereford provided, with minute particularity, details, all of which were corroborated by police observations, about Draper: his clothing, his travel plans, and the activity in which he was involved. Also, Hereford had been a special employee of the Bureau of Narcotics for six months, and had given the narcotics agent with whom he worked information, which had always proved to be accurate and reliable, about violations of the narcotics laws. In the appeal before us, however, neither the basis for the informant's information, nor the fact of his trustworthiness was established by the anonymous tip.

Clearly, the anonymous tip did not afford probable cause. Nevertheless, I agree with the majority opinion that an otherwise insufficient tip can be augmented to the point of affording probable cause by police observations which might verify the information provided by the tip. This verification may, in some cases, satisfy both requirements: that the information was obtained in a reliable way and that the informer was trustworthy. But when a tip is received from a completely unknown source, there must be some independent verification of the fact that criminal activity has occurred. The observation of innocent behavior alone is not sufficient. The majority opinion relies on "the suspicious conduct of Edmond after he spotted the officers when he . . . took out an object . . . and transferred it to the trunk" as verification of the criminal nature of the activity the officers observed. However, the district court's finding that the transfer was made "[a]t one point during the surveillance" is not a finding that the transfer was made in response to Edmond's realization that the officers, who were not in uniform and drove an unmarked car, were observing his actions. Also, a person's transfer of an unidentified object from the interior of a pas-

senger vehicle to its trunk is neither a criminal act nor inherently suspicious just because it was made during a period of police surveillance of which the transferer might have been unaware.

Good police practices required the officers to investigate the tip, and their observations may have heightened their suspicions to encourage them to continue their surveillance until they observed criminal activity. Nevertheless, mere suspicion does not constitute probable cause and does not permit police officers to invade an area protected by the Fourth Amendment. The circumstances here are unlike those in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1971), or *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the officers' investigation created a serious risk to their safety and therefore a limited frisk of a suspect was reasonable. And even if these officers were permitted to search, as they did, the person of appellee and the interior of his car, they found no evidence of any crime and were afforded no additional reason to search the locked trunk beyond their earlier observation of the transfer of an unidentified object. In fact, the failure of the search to disclose any evidence of a crime made the earlier observation less implicative of any unlawful activity.

The majority opinion further suggests that "exigent circumstances" existed that justified the search of the automobile. If the opinion is suggesting that an automobile, because it is moveable, may be searched without probable cause, it is obviously wrong. Searches of automobiles conducted without probable cause have been upheld only when they are a necessary incident of a caretaking function, and only when no investigatory motive was involved. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). If the majority opinion is suggesting that "exigent circumstances" may lessen the standard for probable cause, it offers no support for this novel idea. Exigent circumstances become relevant only after probable cause

has been found and then only to determine whether a warrant must be obtained.

Finally, I dissent from the suggestion in the majority opinion that evidence seized by constitutionally impermissible means should not be suppressed in federal prosecutions if no claim of innocence is asserted. Although this may be a proper consideration in federal collateral review of state convictions where the issue of a claimed unconstitutional search has been fully and fairly litigated in state courts, see, *e.g., Stone v. Powell*, 423 U.S. 817, 96 S.Ct. 29, 46 L.Ed.2d 34 (1976), it has no application in direct criminal appeals.