**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Carl GARRETT, Defendant-Appellant.**

**No. 79–5062.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1979.

Decided Aug. 15, 1980.

David E. Melcher, Cynthiana, Ky., (Court-Appointed), for defendant-appellant.

Patrick H. Molloy, U. S. Atty., C. Cleveland Gambill, James E. Arehart, Asst. U. S. Attys., Lexington, Ky., for plaintiff-appellee.

Before CELEBREEZE, BROWN and KENNEDY, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Defendant-appellant Garrett was indicted for possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), in the Eastern District of Kentucky. Prior to his bench trial, Garrett moved to suppress certain evidence seized after his arrest at the Greater Cincinnati Airport, alleging that his arrest was not based upon probable cause. The district court denied the motion. Garrett was subsequently convicted as charged. Holding that no probable cause existed for Garrett's arrest and that therefore the search and seizure were unlawful, we reverse.

I

At approximately 8:00 A.M. on December 2, 1976, narcotics agent Laurence Handorf of the Cincinnati Police Department Narcotics Unit received a telephone call from a person identifying himself as Ralph Morgan, a security guard at the Los Angeles International Airport. Morgan informed Handorf that a light-complected male Negro, approximately 5' 6"–5' 8" tall, wearing

a black suit and black hat, was enroute on American Airlines from Los Angeles to Cincinnati, via Dallas, and that he would arrive about 9:00 A.M. carrying a large quantity of heroin. Morgan stated that his information was from a "very good informant" who had observed the man in possession of the heroin. Although Morgan did not know the man's true name or the name under which he was flying, he did know that it was an alias. Morgan told Handorf that he had tried unsuccessfully to have the man apprehended in Dallas. Handorf noted that Morgan used "airport terminology" in conveying the information.

Officer Handorf requested a call-back number for verification purposes. Although Morgan gave a number without hesitation, Handorf was unable to reach him when he attempted to verify the call. Handorf then called the Los Angeles Airport Security Personnel Office, which also did not answer. He realized, however, that it would be very difficult to reach anyone at the office at that hour of the morning on the West Coast. With less than an hour before the arrival of the flight, Handorf left Cincinnati for the Greater Cincinnati Airport, located across the Ohio River in Boone County, Kentucky.

At the airport, Handorf learned that American Airlines did indeed have a flight from Los Angeles, via Dallas, arriving at 9:01 A.M. (Flight 540) and that only one person on that flight had originally boarded in Los Angeles, a cash-paying passenger named D. Stone. Handorf was joined at the airport by Colonel Yaden of the Erlanger, Kentucky Police Department, who was then informed of all the facts known to Handorf.[1]

Handorf and Yaden observed the passengers of Flight 540 as they deplaned. Two Negro males were on the flight. The first did not match the description, because he was substantially taller than 5′ 8″. The second man did physically fit the descrip-

tion, and he wore a black suit, black overcoat and black hat. The man walked into the lobby area to a telephone booth. Handorf and Yaden approached the man at the booth and immediately placed him under arrest.

After the arrest, the man identified himself as Ronald Garrett, and when asked why he was flying under the name of D. Stone, he stated, "Well you know how it is." Garrett was then taken to an American Airlines V.I.P. room where he was searched. The search disclosed seven glassine bags of brown heroin that had been sewn into the lining of his hat, and an aluminum foil packet of heroin in his wallet.

Prior to trial, Garrett moved to suppress the heroin that was seized at the airport. A hearing was held on the motion at which the motion was denied, the district judge stating the reasons from the bench. A bench trial was then held, and Garrett was found guilty and sentenced to 10 years imprisonment, followed by a special 3 year parole term.

## II

Garrett's primary argument on appeal is that the district court erred by denying his motion to suppress the seized heroin. He contends that the officers, Handorf and Yaden, lacked probable cause to arrest him and that therefore the subsequent search of his person incident to arrest was unlawful.

The district court, in overruling the motion to suppress, did not, in support of the validity of the arrest, rely on the proposition that Garrett met the "drug courier profile."[2] Rather, the district court found that the information received over the telephone by Agent Handorf from "Ralph Morgan," plus the fact that Garrett fitted the physical description and wore clothes as was related to Handorf and apparently came from Los Angeles, gave Handorf probable cause to believe that Garrett was carrying

---

1. Yaden's presence was required because Handorf, a Cincinnati police officer, had no arrest authority at the airport, since it is located in Kentucky.

2. The ingredients of this profile are set out in *United States v. Mendenhall*, —— U.S. ——, footnote 1 at ——, 100 S.Ct. 1870, footnote 1 at 1873, 64 L.Ed.2d 497 (1980).

heroin and therefore probable cause for the arrest and search.

■ The standard for determining probable cause was clearly stated by the Supreme Court in *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964):

> Whether [an] arrest [is] constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

In the case of hearsay information such as in the instant case, the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964), must be met. Under this test, the credibility of the informant and the reliability of his information as such was presented to Handorf prior to the arrest must be demonstrated. *Id.*

Since the information claimed to support probable cause for the arrest must meet the *Aguilar* requirements as to both Morgan and his informant, *see Spinelli v. United States*, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637 (1969), the government must show that at the time of the arrest Handorf reasonably believed that the information received from Morgan and from Morgan's informant was correct.

■ The government does not seriously contend that, looking only to the information that Handorf received from Morgan and his informant, the *Aguilar* standards were met in this case. Handorf was not able to confirm prior to the arrest that Morgan was in fact a security officer at the Los Angeles airport although Morgan purported to give him a call-back number for verification. On the contrary, he found that Morgan could not be reached at that number and also found that the security office was not open at that time.[3] Moreover, the only statement of Morgan indicating the reliability of his informant was Morgan's assertion that he was a "very good informant." His conclusory statement reveals no more of the circumstances underlying the informant's reliability than the statement in *Aguilar* that "[a]ffiants have received reliable information from a credible person;" a statement which, of course, was held insufficient upon which to base probable cause.

The fact that a tip does not itself conform to *Aguilar* standards, however, does not necessarily mean that the information detailed in the tip cannot be used to support probable cause. Deficiencies in an informant's tip may be cured through the independent investigations of law enforcement officers, which corroborate or verify the information contained in the tip. For example, in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), information was received by a narcotics agent from a "special employee," who had been reliable, that a man, specifically described, would arrive on a train and would be carrying narcotics, and the Court held that the arrest of a man fitting the description was with probable cause. However, the problem was not, as it is here, with the credibility and reliability of the informer; the "corroboration" needed had to do with whether the narcotics agents reasonably believed that the man that they arrested was the one referred to by the informer, and the Court concluded that, since the subject of their arrest fitted the description, the arrest was proper.

If, in the instant case, the conduct of Garrett, after he left the airplane and before he was arrested, had appeared suspicious and had indicated that he was involved in a criminal undertaking, then it could reasonably be said that the tip of the informer had been sufficiently corrobo-

---

**3.** Although it is not relevant to the present inquiry, Handorf ascertained, after the arrest and seizure of the heroin, that there was no Ralph Morgan who was a security officer at Los Angeles airport and that the telephone number he received was for a telephone in Berkeley, California.

rated. *United States v. Craemer,* 555 F.2d 594 (6th Cir. 1977) and *United States v. Edmond,* 548 F.2d 1256 (6th Cir.) *cert. denied* 433 U.S. 912, 97 S.Ct. 2983, 53 L.Ed.2d 1097 (1977). See also: *United States v. Gill,* 555 F.2d 597 (6th Cir. 1977). But here the government does not contend that there was any such conduct, and in any event Handorf testified that there was nothing suspicious about Garrett's conduct. While Garrett carried only an attache case, it was not at that time known whether he had checked other luggage. And while the officers had been advised that there was only one passenger on the flight who had come from Los Angeles—that passenger, a cash fare—they did not know that it was defendant who was traveling as D. Stone until after his arrest. Nor did they confirm that D. Stone was not his true name until after the arrest was effected.[4]

### III

For these reasons we conclude that probable cause for Garrett's arrest did not exist, and that the district court erred in failing to suppress the seized evidence. Because we must reverse on the suppression issue, we have no need to reach Garrett's other contention that the evidence was insufficient to show the intent to distribute the heroin.

The judgment of the district court is hereby reversed.

---

**4.** As stated, the district court did not rely on the "drug courier profile" in denying the motion to dismiss. In its brief, the government seems to make an argument based thereon, but clearly most of the ingredients of such profile were not present. It is clear from his testimony that Handorf did not rely on facts that go to make up the profile in deciding to arrest Garrett.