**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gerald M. PASQUARILLE, Defendant–Appellant.**

No. 93–5954.

United States Court of Appeals, Sixth Circuit.

Argued March 1, 1994.

Decided March 31, 1994.

Rehearing and Rehearing En Banc Denied May 16, 1994.

Harwell G. Davis, III, Asst. U.S. Atty. (argued and briefed), Chattanooga, TN, for plaintiff-appellee.

Perry H. Piper (argued and briefed), Federal Defender Services of Eastern Tennes-

see, Inc., Chattanooga, TN, for defendant-appellant.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Gerald M. Pasquarille appeals the district court's order denying his motion to suppress evidence seized during a motor vehicle search and his subsequent guilty plea to and conviction for possession with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1) and using and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). On appeal, the issue is whether the district court properly denied defendant's motion to suppress the drugs and the firearm. For the reasons that follow, we affirm.

## I.

### A.

On March 6, 1993, an informant telephoned the Police Department in Monteagle, Tennessee, stating that he had observed a man attempting to sell cocaine at a truckstop off Interstate Highway 24. The informant, who identified himself as someone who was transporting prisoners, also described the type, color, and license plate of the vehicle the alleged seller was operating. The information provided by the informant was subsequently relayed by the Monteagle Police Department to Teddy Trail, one of its officers.

While driving on Interstate 24 near Monteagle Mountain, Officer Trail observed Tennessee Highway Patrol Officer Donald Kelsey stopped on the eastbound lane of the interstate assisting a motorist with a broken-down vehicle. Officer Trail stopped his vehicle and approached Officer Kelsey to inform him of the information relayed by the Monteagle Police Department. Specifically, Officer Trail stated that the Monteagle Police Department had received information from an eyewitness, who was transporting prisoners, that a man had just attempted to sell drugs at a truck stop off Interstate 24 approximately one mile from where they were and that a light-colored van with a step-top bearing a Florida license plate ending with the characters "91E" was involved in the attempted sale. Upon relaying this information to Officer Kelsey, Officer Trail departed.

After assisting the motorist with the broken-down vehicle, Officer Kelsey, while proceeding up Monteagle Mountain, observed Officer Trail and a van stopped at a rest area off Interstate 24. By the time Officer Kelsey pulled into the rest area, Officer Trail had already obtained the driver's license of the person driving the van, defendant Gerald W. Pasquarille,[1] and several documents related to the ownership and registration of the vehicle. Upon his arrival at the scene, Officer Kelsey was handed the documents and given charge of the matter.

The driver's license produced by defendant was issued by the State of New York. The light-colored van with a step-top, which matched the informant's description including the Florida license plate ending with "91E," was registered to Donetta Hibbard of Treasure Island, Florida. A written bill of sale provided by defendant purported to transfer title to defendant from a seller named Mark Lewis of Treasure Island, Florida, for the amount of $50.00. A computer check of the vehicle through the National Crime Center indicated that the van had not been reported stolen. When Officer Kelsey asked defendant where he was headed, defendant responded that he left his job as a shrimp boat fisherman in Florida and was headed to Amarillo, Texas. Defendant also indicated that he was living out of the van.

When Officer Kelsey asked defendant whether he could search the van without a warrant, defendant refused to give his consent. Another Tennessee Highway Patrol Officer subsequently arrived with a German shepherd police dog trained to detect the presence of drugs. The dog circled the perimeter of the van but failed to indicate the presence of drugs in the van. Officer Kelsey

---

1. The district court judgment spelled defendant's last name "Pasquarillie." We, however, refer to the spelling used by the parties.

then issued a citation to defendant for improper vehicle registration and arrested him. Officer Kelsey based his decision to arrest defendant on his belief that because defendant was not a Tennessee resident but rather a transient, defendant probably would not voluntarily appear in court to respond to the citation.

After arresting defendant, Officer Kelsey determined that pursuant to Tennessee Highway Patrol policy, he was required to have the van towed from the rest area. Officer Kelsey also determined that according to Tennessee Highway Patrol policy, an inventory search must be conducted on all vehicles that are to be towed. Accordingly, with the assistance of the police dog, Officer Kelsey began to conduct the inventory search of the vehicle. Once in the van, the police dog detected the presence of cocaine inside a pocket of defendant's coat. Upon further search, approximately 359 grams of cocaine powder, 6 grams of crack cocaine, and a loaded handgun were found. In addition to the drugs and handgun being seized, Officer Kelsey completed an inventory report of the remaining items in the van.

### B.

A two-count indictment subsequently was returned against defendant. Count 1 charged defendant with possessing with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1). Count 2 charged defendant with using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).

In a subsequent motion filed to suppress the admission of both the drugs and the handgun, defendant argued that the van "was searched without probable cause, without a warrant, and was [sic] not incident to arrest." J.A. 11. After hearing testimony from Officer Kelsey and arguments presented by the parties, the district court issued a written order denying the motion to suppress. The district court first concluded that the search conducted by Officer Kelsey was a valid inventory search. In the alternative, the district court upheld the search as a valid search incident to arrest.

Defendant thereafter entered a conditional plea of guilty to both counts contained in the indictment, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, specifically reserving the right to appeal the denial of his motion to suppress. The district court sentenced defendant to 37 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2, with the terms on each count to run consecutively. This timely appeal followed, and during oral argument, the parties were ordered to file supplemental briefs on the issue of whether Officer Kelsey had probable cause to search defendant's van. Supplemental briefs have been filed and reviewed.

### II.

■ "In reviewing a district court's determinations on suppression questions, a district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." *United States v. Thomas,* 11 F.3d 620, 627 (6th Cir.1993) (citing *United States v. Ogbuh,* 982 F.2d 1000, 1002–03 (6th Cir.1993)). Moreover, in affirming a denial of a motion to suppress, we need not rely on the grounds set forth by the district court. Rather, a denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason. *United States v. Barrett,* 890 F.2d 855, 860 (6th Cir.1989).

### A.

We begin our analysis by considering whether Officer Kelsey had probable cause to search the van. Probable cause has repeatedly been defined in terms of the facts and circumstances known to the officers at the time of the search. *United States v. Nigro,* 727 F.2d 100, 103 (6th Cir.1984) (en banc). As noted by the Supreme Court:

[P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief[ ] that certain items may be contraband or stolen property or useful as evi-

dence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required. *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations and internal quotations omitted).

Moreover, whether probable cause exists should be determined by the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir.1993) (en banc) (internal quotations omitted). As we have observed:

> "The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductions ... that might well elude an untrained person.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*United States v. Barrett,* 890 F.2d 855, 861 (6th Cir.1989) (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

Under facts substantially similar to those in this case, the Supreme Court in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), found the existence of probable cause. In *Draper,* an informant told a federal narcotics agent that Draper would arrive in Denver on a train from Chicago on either of two days and would be carrying a quantity of heroin. The informant, who was a "special employee" of the Bureau of Narcotics at Denver for about six months and from time to time had given the agent information about narcotics violations in return for small sums of money, also gave the agent a description of Draper, including the race, complexion, age, height, and weight of Draper; a detailed description of the type of clothes and shoes Draper was wearing; a description of the type of bag Draper would be carrying; a detailed description of the quantity of narcotics Draper would be possessing (three ounces of heroin); and a description that Draper "habitually 'walked real fast.'" *Draper,* 358 U.S. at 309, 79 S.Ct. at 331.

On one of the specified dates in which the informant stated that Draper would appear, the agent and a Denver police officer observed a person matching the descriptions provided by the informant exit an incoming Chicago train and walk swiftly towards the exit. The agent and the police officer approached the man, later identified as Draper, and arrested him. Upon a search of Draper, the agent and the police officer found two envelopes containing heroin. The agent and the police officer also uncovered a syringe located in Draper's bag.

In considering whether to uphold the determination as to whether the agent and police officer had probable cause to believe that Draper had committed or was committing a violation of the narcotics laws, the Court noted that

> "[i]n dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*Draper,* 358 U.S. at 313, 79 S.Ct. at 333. (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). The Court noted that by the time the agent had observed Draper's race, physique, clothing, baggage, and gait, he had "personally verified every facet of the information given him by [the informant] except whether [Draper] had accomplished his mission and had the three ounces of heroin on his person or in his bag." *Id.* 358 U.S. at 313, 79 S.Ct. at 333. Because every bit of the information provided by the informant was personally verified, the Court concluded that the agent had probable cause to believe that Draper was committing a crime at the time of arrest.

■ The establishment of probable cause in the present case is just as evident as it was in *Draper*. Here, Officer Kelsey was given a detailed account by another police officer that, according to an eyewitness informant, an individual was attempting to sell drugs at a nearby truck stop on Interstate 24, the vehicle in the attempted sale involved was a light-colored van with a step top, and the vehicle bore a Florida license plate ending with the characters "91E." By the time Officer Kelsey approached Officer Trail and the van stopped along a rest area on Interstate 24, Officer Kelsey personally verified every facet of the information provided by the informant except whether defendant's van was involved in the selling or possessing of narcotics. Accordingly, we conclude that Officer Kelsey had probable cause to believe that the van contained evidence of a crime.

■ We disagree with defendant's suggestion that the informant's tip lacked sufficient indicia of reliability to support a finding of probable cause. "Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability." *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). In weighing the validity of an informant's tip, the informant's "veracity" or "reliability" and the informant's "basis of knowledge" are no doubt relevant considerations. *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. However, these two inquiries, commonly referred to as the "two-pronged test," are not to be accorded independent status in that the absence of one renders the tip insufficient to support a probable cause determination. *Id.* Instead, as *Gates* made clear:

[T]hey are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal activity—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality-of-the circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

*Id.* at 233–35, 103 S.Ct. at 2329–2330 (citations and footnotes omitted).

■ Viewing the evidence under the totality of the circumstances, we conclude that the informant's tip provided probable cause for Officer Kelsey to believe that contraband was contained in defendant's van. Although the name of the informant was not obtained, the record reveals that the informant identified himself or herself as a transporter of prisoners who had just observed an individual attempting to sell drugs at a truck stop off Interstate 24. The fact that the informant identified himself or herself and that he or she personally observed the attempted sale distinguishes this tip from that in *Gates* wherein the Court found that an anonymous tip from someone who provided no personal knowledge for the information provided was, standing alone, insufficient to provide a basis for probable cause to believe that contraband would be found in the car and home of the defendant. *Id.* at 227, 103 S.Ct. at 2326.[2]

---

**2.** In *Gates*, however, the Supreme Court held that the information provided by the informant

Moreover, the informant's ability to describe in detail the type of the vehicle, the state from which the license plate was issued, and several of the characters contained on the license plate provides further support that the tip provided a sufficient basis for a probable cause determination. *United States v. Hernandez*, 825 F.2d 846, 850 (5th Cir.1987) (upholding a finding of probable cause based on tip provided by an eyewitness informant who gave detailed account of individuals trying to pass counterfeit notes), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).

None of the cases relied upon by defendant casts doubt upon our conclusion that Officer Kelsey had probable cause to believe that the van contained narcotics. In *United States v. Wright*, 16 F.3d 1429 (6th Cir.1994), we concluded that given the tip by the named informant, the confirmation by police officials of a prior drug trip, and the police officials' observation of defendant's actions, the police officials had probable cause to believe that the vehicle in question contained narcotics. Because the factors we found relevant in *Wright*, namely, that the tip was provided by a named informant who described the individual engaged in drug related activity and the methods by which the individual acted, are absent in this case, defendant argues that there is insufficient evidence to support a determination of probable cause. However, the factors we found relevant in *Wright* were not meant to imply that the absence of such factors barred the conclusion that probable cause exists. Rather, as we stated in *Wright*, the determination of probable cause is to be judged under a totality of the circumstances analysis for each particular case.

■ In *United States v. Johnson*, 9 F.3d 506 (6th Cir.1993), this court concluded that police officials had probable cause to enter a residence which, according to an informant, was being burglarized. In *Johnson*, the panel found it significant that the police officials were responding to a call reporting a possible burglary in progress, that upon arrival at the residence, the police officials discovered a broken window and two individuals inside, and that one of the individuals inside was unable to satisfy the officers that she lived at the residence. *Id.* at 509. Defendant argues that the facts in this case are distinguishable from those in *Johnson* because here Officer Kelsey had no corroborating information which would have allowed a reasonable officer to conclude that a crime had been committed. This is simply not true. As noted above, the tip was supplied by an eyewitness who recently saw the attempted drug sale. Moreover, the information provided a detailed description of the van involved in the attempted drug sale and the location of the alleged drug sale. By personally verifying each of the elements provided by the informant with regard to the description of the van, Officer Kelsey had ample corroborative information to form the basis of probable cause. For these reasons, defendant's reliance on *United States v. McNeal*, 955 F.2d 1067, 1077 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 3039, 120 L.Ed.2d 908 (1992), a case in which we found that an informant's tip plus the police officers' own observation provided reasonable suspicion for the officers to believe that McNeal was armed and dangerous, is equally unavailing.

In *United States v. Jordon*, 530 F.2d 722, 726 (6th Cir.1976) (per curiam), this court stated that "[i]n the absence of underlying circumstances detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that a court may determine that the informant is relying on something more than casual rumor." Finding that the testimony of the arresting officer could not corroborate the essence of the tip, namely, that Jordon was engaged in committing a crime, we held that a warrantless search initiated by the informant's tip was not based on probable cause. Seeking to analogize this case to that in *Jordon*, defendant argues that the informant's tip did not describe the defendant's alleged criminal activity with any specific detail, and there is no information in the

plus the police officials' corroboration of major portions of the informant's predictions provided

probable cause for a warrant to issue.

record as to how the informant learned of the defendant's alleged activities. Defendant, however, overlooks the fact that in *Jordon* we found it significant that the tip in that case did "not purport to recount personal and recent observations of the informant." *Id.* at 725. In this case, not only did the informant recount personal observations but also recounted his observations soon after the events occurred.

In *United States v. Ingram*, No. 92–5367, 1993 WL 5914 (6th Cir. Jan. 13, 1993) (unpublished) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 452, 126 L.Ed.2d 385 (1993), this court concluded that the affidavit presented to prove probable cause existed was insufficient. In the affidavit at issue, a Greeneville, Tennessee, police officer stated that he had received information from a citizen informant that Ingram was in possession of LSD, that the informant had been at the residence of Ingram within the past five days and had observed LSD, that an agent had also received information from a confidential informant about Ingram's drug related activities, and that the informant provided directions to Ingram's residence and a description of the residence which he had verified. The court in *Ingram* stated that had the "citizen informant" been an identified bystander or a victim-eyewitness, a presumption of reliability would have been accorded the statements of the informant without independent corroboration. *Id.* at *2. However, because the "citizen informant" was an anonymous tipster, we held that independent corroboration in addition to the verification of public information was required to provide probable cause. The facts in this case are readily distinguishable from *Ingram*. Here, the informant was identified and was an eyewitness to the alleged crime. Thus, because the informant's account was based on firsthand observations as opposed to "idle rumor or irresponsible conjecture," *United States v. Phillips*, 727 F.2d 392, 397 (5th Cir.1984), we presume that the statements are reliable.

Apart from relying on several cases from this circuit, defendant raises two other arguments, each of which are unpersuasive. First, relying on statements in *United States v. Hensley*, 713 F.2d 220 (6th Cir.1983), *rev'd*

*on other grounds*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), that as a general rule probable cause for arrest may emanate from collective police knowledge so long as there is a direct investigative relationship between the various law enforcement agencies, defendant argues that because there was no direct investigative link between the informant and either the Monteagle Police Department or Officer Kelsey, the police officer's "collective knowledge" is insufficient to establish probable cause.

Defendant's argument misconstrues the relevant relationship necessary under the "collective knowledge" rule as set forth in *Hensley*. In that case, the St. Bernard, Ohio, Police Department interviewed Janie Hansford regarding an armed robbery. During the interview, Hansford gave written statements implicating Hensley in the robbery. Although a St. Bernard police officer did not believe that he had probable cause to arrest Hensley, he nonetheless circulated a flyer to neighboring police departments requesting that Hensley be stopped "for investigation only." *Id.* at 222. In response to this flyer, a Covington, Kentucky, police officer stopped Hensley and subsequently placed him under arrest.

In *Hensley*, we stated that "[a]lthough this Court has upheld the general rule that probable cause for arrest may emanate from collective police knowledge, these cases all considered the collective knowledge of police officers who were directly involved in the investigations that prompted the various arrests." *Id.* at 223 (citations omitted). In contrast to defendant's argument, however, nowhere did this court require that a direct investigative relationship exist between *the informant* and the police department. Rather, in *Hensley*, we held that for purposes of the "collective knowledge" rule, the relevant inquiry was the "direct investigative relationship between *the two police departments.*" *Id.* (emphasis added). Here, there is no contention that Officer Trail of the Monteagle Police Department and Officer Kelsey of the Tennessee Highway Patrol were not directly involved in the investigations that prompted the arrest of defendant.

Defendant's final argument is equally unavailing. He argues that because the district court determined that probable cause did not exist given the facts at the suppression hearing, we should give that determination deference. The short answer to defendant's argument is that the district court never determined whether Officer Kelsey had probable cause to believe that contraband was located in the van. Thus, there is no judgment to which we can defer.

## B.

 Having concluded that Officer Kelsey had probable cause to believe that drugs were contained in the van, we now consider whether Officer Kelsey's warrantless search of the van violated the Fourth Amendment. The Fourth Amendment provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). There are several exceptions to the general rule that a warrant is necessary before a search is undertaken, one of which is the "automobile exception" originally set forth in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Under that exception, as noted recently by the Supreme Court, "a warrantless search of an automobile based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle [does] not contravene the Warrant Clause of the Fourth Amendment." *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (citing *Carroll*, 267 U.S. at 158–59, 45 S.Ct. at 287).

We conclude that Officer Kelsey's warrantless search did not violate the Fourth Amendment. "[W]here police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any containers located within it." *United States v. Mans*, 999 F.2d 966, 969 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct.

567, 126 L.Ed.2d 467 (1993). In this case, Officer Kelsey had probable cause to believe that drugs were contained somewhere in the van. Accordingly, he was authorized to search the entire vehicle.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.