**NOT FOR FULL-TEXT PUBLICATION**
File Name: 09a0175n.06
Filed: March 4, 2009

**No. 08-5034**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

                                   ON APPEAL FROM THE
v.                                UNITED STATES DISTRICT
                                   COURT FOR THE MIDDLE
TRAVIS DESHAN STEWART,      DISTRICT OF TENNESSEE

      Defendant-Appellant.

_____/

BEFORE:    SUHRHEINRICH, BATCHELDER and SUTTON; Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.** Defendant Travis Deshawn Stewart appeals the district court's denial of his motion to suppress following his conditional entry of a plea of guilty to possession of a firearm by a convicted felon. We **AFFIRM.**

### I. Background

      On March 21, 2007, Defendant was indicted on one count of being a convicted felon in possession of a firearm, a Smith and Wesson, Model SW40V, .40 caliber semi-automatic pistol, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a), on or about August 15, 2006. He filed a motion to suppress all evidence and statements arising from what he claimed was an illegal arrest and search of his automobile on that date. The district court held an evidentiary hearing, which gave rise to the following facts.

On August 15, 2006, Officer Broderick Jones of the Metropolitan Nashville Police Department was working in the MNPD's East Precinct's "Flex Unit." The Flex Unit targets crime relating to narcotics, guns, and prostitution.

At around 11:30 a.m., Jones was traveling in a marked car down Leland Avenue in Nashville. As he drove, Jones observed four black males walking towards him on the opposite side of the street. As Jones approached the group, he saw one of the men, Defendant, dart into an intersecting alley, while the others continued walking down Leland Street. Jones watched Defendant walk a few feet down the alley, which was lined with some bushes. After only a few moments, Defendant came out of the alley and rejoined the others walking down the street.

Through his rearview mirror, parked where Defendant could not see him, Jones saw Defendant turn around and go back into the alley. Jones turned his patrol car around and drove back toward the alley and parked the vehicle. From this vantage point, Jones observed Defendant talking on his cellphone and walking down the alley. Jones moved his patrol car to the front of the alley so he could talk to Defendant. Jones lowered his window and asked Defendant his name. Defendant gave Jones his driver's license. Jones checked and found no outstanding warrant against Defendant. Jones then asked Defendant what he was doing. Defendant said he was waiting for his brother to pick him up at the Dollar General Store. However, when Jones first observed Defendant and the group, they were walking away from the direction of the General Dollar Store. Jones noted the discrepancy but allowed Defendant to move away.

After this, Jones contacted other Flex Unit officers and asked for assistance. Officers Michael Wilson and Shane Fairbanks responded. The three officers went back to the alley and searched the area. Wilson observed a plastic baggie lying on top of weeds just inside a square wire

woven fence on the left side of the alley. Wilson retrieved the baggie, which was dry, despite the fact that everything else in the area was damp or wet from a rain the previous night. The baggie appeared to contain crack cocaine, and testing confirmed that it contained 2 grams of crack cocaine.

Meanwhile, Jones had proceeded to the Dollar General Store on Gallatin Road and found Defendant outside. Jones arrested Defendant for possession of crack cocaine and handcufffed him. Jones then searched Defendant's pockets and found a set of car keys with a General Motors logo. Defendant said the keys were not his and that he did not know to whom they belonged. Jones gave Fairbanks the keys, and Fairbanks went back to the area around the alley to try to find the Chevrolet or General Motors vehicle which matched the keys. Fairbanks began pressing the keyless entry but it appeared not to be working. He then tried with the key to unlock the trunk of a nearby white Chevrolet Impala and he heard it unlock the trunk. Fairbanks did not look inside the trunk and he pushed the trunk lid back down. He unlocked the passenger door with the same key and then immediately shut the door. Fairbanks then walked to the house where the Impala was parked and asked about the Impala. The residents claimed it was not theirs.

Fairbanks radioed Jones that he found the car that matched the key. Jones put Defendant in the patrol car and drove to the Impala. Several other officers arrived at the scene and brought a drug-sniffing dog. The dog alerted on the passenger door. The car door was opened and the dog alerted on the ashtray area of the front seat. The officers then searched the vehicle and found 2.7 grams of powder cocaine in the ashtray, 1.7 grams of marijuana in the glove box, a loaded .40 caliber Smith and Wesson handgun under the driver's seat, and an envelope with Defendant's name on it.

Jones returned to the patrol car and read Defendant his *Miranda* rights. Jones then told Defendant what they found in the vehicle, and Defendant admitted that everything in the Impala belonged to him.

The Impala was impounded, and later repossessed and sold at an auto auction.

On March 21, 2007, Defendant was indicted with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). Defendant moved to suppress the gun, the drugs from the Impala, and his confession on the grounds that they were fruits of a warrantless search and seizure. The district court conducted an evidentiary hearing and ultimately denied the motion. Defendant then pleaded guilty, reserving the right to appeal the court's ruling. Defendant was sentenced to serve 77 months imprisonment.

## II. Analysis

In reviewing a district court's denial of a motion to suppress, this Court examines factual findings for clear error and legal conclusions de novo. *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005). We consider the evidence in the light most favorable to the government. *Id.*

### A. Probable Cause to Arrest

"Police may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). "Probable cause . . . does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false." *Id.* To be lawful, a warrantless arrest must be based on the totality of the circumstances, and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 238, 245 n. 13 (1983). Thus, the question is "whether, at the time of the

arrest, the facts and circumstances within the arresting officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir.2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

We agree with the district court's finding of probable cause under the totality of the circumstances. As the district court found:

> The totality of the circumstances suggest that a reasonable officer in Officer Jones' position would believe that probable cause existed to arrest Defendant for possession of crack cocaine. At the time of the arrest, Officer Jones was patrolling an area where there had been numerous burglaries. He saw a group of individuals walking down the street towards him. When Defendant saw Officer Jones' marked patrol car, he split off from his friends and abruptly turned into an alleyway, but walked down the alley only a few feet. Defendant then exited the alleyway and rejoined his friends. However, when Officer Jones' patrol car had passed, Defendant again left his friends to re-enter the alley only to exit again a short time later. Upon exiting the alley for the second time, Defendant was asked what he was doing and Defendant replied that he was waiting for his brother to pick him up at the Dollar General Store on Gallatin road, even though Defendant and his companions had been walking in a direction away from the store. After Defendant was permitted to go on his way, the officers were suspicious of Defendant's behavior and they searched the area of the alley where Defendant had first entered and found a baggie containing crack cocaine. That baggie was not wet even though litter and other items in the alley were wet because it had rained the night before. Officer Jones had probable cause to believe that Defendant left the baggie there to avoid detection since he had just entered and exited the alley where the baggie was found and he was the only one seen entering the alley.

In short, viewed in the light most favorable to the government, and based on "a realistic assessment of the situation from a law enforcement officer's perspective," *see United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc), we likewise conclude that the totality of the circumstances support the finding of probable cause to arrest Defendant. At the time of Defendant's arrest, the

officers had reasonably trustworthy information to conclude that Defendant had dropped the crack cocaine in the alley.

Defendant's reliance on *United States v. Hughes*, 898 F.2d 63 (6th Cir. 1990), is misplaced. In *Hughes*, this Court listed four factors "which should be assayed in determining whether the 'totality of the circumstances' provides probable cause in a drug case." *Hughes*, 898 F.2d at 64. They include: "1) the presence of a suspect in a neighborhood notorious for drug trafficking; 2) suspects engaging in a sequence of events typical of a drug transaction; 3) a suspect's flight after being confronted by the police; and 4) a suspect's attempt to conceal the subject of his activities." *Id.* Defendant claims that application of these factors prove that Jones *lacked* probable cause to arrest him.

Defendant claims that the first factor cuts against probable cause because drugs were common in the area and were sometimes deliberately left in places like alleyways. Also, he did not engage in conduct typical of a drug dealer. Rather, he was walking down the street, mid-day, unarmed, with a valid identification card and lacking any outstanding warrants for his arrest. Third, when confronted by Jones, Defendant walked up to the squad car, submitted to the consensual encounter with Jones, produced identification, and gave a reasonable explanation for his behavior. And, when Jones approached him again at the Dollar General Store, where he told Jones he would be, Defendant again did not avoid Jones. Finally, Defendant's behavior suggested that he was *not* trying to conceal anything because at most, Jones saw Defendant step briefly into an alley and did *not* see him drop anything. Defendant therefore claims that probable cause was lacking because the presence of the drugs was a mere coincidence.

We disagree. First of all, the *Hughes* factors are merely a helpful framework for assessing probable cause in drug cases; the test is still the totality of the circumstances. And for the reasons discussed above, under that test, a reasonable officer could have concluded that there was probable cause. That is, Defendant's behavior also supported the officer's perception that a crime had been committed, because upon seeing the marked patrol car, Defendant briefly separated from the group, darted briefly into an alley, and then reentered it moments later after he thought the officer had left. Most importantly, shortly thereafter another officer found a dry plastic baggie of crack cocaine lying in the wet weeds. Viewed in the light most favorable to the government and from the factual and practical considerations of everyday life for police officers patrolling drug-infested neighborhoods, it was reasonable for Jones to believe a crime had been committed.

**B. Probable Cause to Seize the Keys**

Defendant also argues that the police lacked reasonable suspicion to seize his keys and use them to unlock the Impala. We disagree. First, police may search an individual whom they lawfully have arrested. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that after "a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment"); *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir.) (stating that "[o]nce a lawful arrest has been made, the police officer is permitted to search the individual"), *cert. denied*, 128 S. Ct. 819 (2007); *cf. United States v. Robinson*, 390 F.2d 853, 871 (6th Cir. 2004) (stating that this Court has allowed searches of automobiles incident to arrest even if the "arrestee was out of the car, handcuffed, and placed in the back seat of a police cruiser"). Second, they may seize both contraband and any instrumentalities, fruits, or evidence of a crime that they discover in the course of the search. *See United States v.*

*Edwards*, 415 U.S. 800, 802-05 (1974); *United States v. Hayden*, 387 U.S. 294, 300-02, 307 (1973); *see e.g.*, *United States v. Charles*, 138 F.3d 257, 264 (6th Cir. 1998) (upholding a seizure of a pager found in an automobile in a search incident to the arrest of its occupant).[1]

No one disputes, consequently, that the officers had probable cause to arrest Defendant (and, as we have concluded, they did), then they lawfully searched him and lawfully discovered the keys in his pocket. His statement disclaiming any knowledge of the keys,[2] in turn, justified the further step of seizing the keys. That statement suggested two possibilities: One was that Defendant was speaking truthfully and that the keys did not belong to him, in which case the officers reasonably sought to identify the vehicle and owner to which they belonged. The other possibility was that Defendant was lying and that he owned (or at least knew something about) the vehicle associated

---

[1]Defendant's reliance on *United States v. Hayden*, 387 U.S. 294 (1967), *United States v. Place*, 462 U.S. 696 (1983), and *Soldal v. Cook County*, 506 U.S. 56 (1992), is misplaced. *Hayden* held that both items of evidentiary value as well as instrumentalities, fruits, or contraband, may be seized in a lawful search. *Hayden*, 387 U.S. at 300-02. The *Hayden* court also stated that it has "recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers rested on property concepts." *Id.* at 304. Whether viewed as having evidentiary value or as fruits, instrumentalities, or contraband, here the keys were seized as the result of a search incident to arrest. The seizure is not problematic under *Hayden*.

*Place* too is dissimilar because it involved an investigative detention, not probable cause. *See Place*, 462 U.S. at 709. There the Supreme Court held that the police violated the Fourth Amendment by holding the defendant's suitcase at the airport for ninety minutes, which exceed the limits of an investigative detention and which was not justified by probable cause. *Id.* at 708.

*Soldal* held that the Fourth Amendment protected against unreasonable seizures of property in which the individual challenging the seizure has a possessory interest even when a privacy or liberty interest is not at issue. *Soldal*, 506 U.S. at 56-57 (holding that state actors violated the Fourth Amendment by physically removing the plaintiff's mobile home even though a privacy or liberty interest was not implicated based on the owner's property interest). Here, Defendant failed to assert that he had a property or privacy interest in the keys.

[2]Defendant does not contest this. In his motion to suppress in the district court, he ezpressly stated that he "never claimed ownership of any automobile."

-8-

with the keys found in his pocket, suggesting that the vehicle might contain fruits, evidence or instrumentalities of his drug-related offense. In either case, the officers were justified in seizing the keys to look for the vehicle. Defendant's statement denying any connection to the keys, to be sure, came before the officers advised Defendant of his *Miranda* rights, but since Defendant does not argue his statement was involuntary, that fact does not affect the admissibility of the evidence the officers discovered as a result. *See Oregon v. Elstad*, 470 U.S. 298, 307-09 (1985); *see United States v. Sangineto-Miranda*, 859 F.2d 1501, 1517-19 (6th Cir. 1988).

Furthermore, this Court has held that "[t]he mere insertion of a key into a lock, by an officer who lawfully possesses the key and is in a location where he has a right to be, to determine whether the key operates the lock, is not a search." *United States v. Salgado*, 250 F.3d 438, 456 (6th Cir. 2001); *United States v. DeBardeleben*, 740 F.2d 440, 444-45 (6th Cir. 1975). The officers here did not conduct an actual search of the inside of the Impala until after they had probable cause based on the canine dog's positive hit on the vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (stating that the use of a well-trained drug detection dog does not by itself implicate any privacy interests); *Place*, 462 U.S. at 707 (holding that a canine sniff by a well-trained narcotics detection dog does not constitute a search within the meaning of the Fourth Amendment); *United States v. Perez*, 440 F.3d 363, 375 (6th Cir. 2006) (holding that "[t]here is probable cause to justify a warrantless search of a vehicle once a properly trained and reliable drug detection dog alerts positively to the presence of drugs"). Thus, because they had probable cause to search the Impala, the subsequent seizure of the narcotics and gun was lawful. And finally, Defendant's incriminating statements were made after he was advised of his *Miranda* rights.

### III. Conclusion

For the foregoing reasons, the decision of the district court denying Defendant's motion to suppress is **AFFIRMED.**