NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0275n.06

Case No. 21-5373

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 12, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| QUINN R. TURNER, | ) | |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

COLE, Circuit Judge. After an unsuccessful motion to suppress, Quinn Turner was found guilty on all four counts of a second superseding indictment that charged him with, among other things, conspiring to distribute methamphetamine in the Eastern District of Kentucky and elsewhere. As a part of the conspiracy, the jury found that Turner coordinated with Laura West, Ashley Daugherty, Helen "Ann" Hardin, and Shiera Brown—at a minimum—to further his criminal enterprise. Relevantly, testimony from Turner's coconspirators revealed that Turner sold roughly fourteen pounds of methamphetamine of unknown quality per month between June and October 2018. At sentencing, the district court determined that Turner's base offense level would be 36, based on the drug quantities seized from an October 3, 2018 search and Daugherty's trial testimony regarding the volume of methamphetamine Turner sold prior to his arrest. The district

court also found that Turner was a "manager" of the conspiracy and applied a three-level enhancement for this role.

Turner appeals the district court's denial of his motion to suppress and renews his challenge to the sufficiency of the evidence used to convict him. Turner also challenges the district court's calculation of his base offense level and the application of the managerial-role enhancement to his sentence. Finding no error, we affirm.

## I. BACKGROUND

### A. Factual Background

In early September 2018, a confidential informant ("CI") contacted Officer Anthony Jansen and informed him that the CI could obtain methamphetamine from a woman named Laura West. Jansen was an officer with the City of Covington's Police Department and was assigned to the Northern Kentucky Drug Strike Force. On October 2, 2018, the CI—at Jansen's direction—conducted a series of police-monitored phone calls with West to arrange a methamphetamine purchase. West agreed to deliver one pound of methamphetamine to the informant the following day in Verona, Kentucky.

After a series of delays, the transaction was set to occur the night of October 3, 2018. At or around 8:00 p.m., the CI again called West. The two agreed to meet in the parking lot of a Dollar General store. During these police-monitored calls, West implied that she would not be alone during the transaction. She often used "we" rather than "I" and warned that "[her] dude [didn't] want there to be any funny business." (Suppression Hr'g Tr., R. 43, PageID 110.) Jansen recalled that West said her dude "just want[ed] to be where" the transaction occurred. (*Id.*)

While West was en route, law enforcement officers made their own preparations. Police used multiple surveillance units to monitor the Dollar General parking lot. They also parked the CI's vehicle in the lot to make it appear as though the CI was there.

Just before West arrived, she called the CI and told the CI that she was in gray or black Nissan sedan that would be backing into a parking spot. Jansen relayed this information to the surveillance units. Shortly after, Michael Rowland, an officer stationed half a mile away, saw a dark-colored sedan exit the highway, pull into the Dollar General parking lot, and back into a space. The Nissan was the only car in the lot that was backed into a parking space, and the only vehicle that matched the description given by West.

Turner was driving the Nissan. A woman named Shiera Brown was in the front passenger seat, while West was in the back seat. West was arrested on active arrest warrants she had from the state of Kentucky. Although neither Turner nor Brown had arrest warrants, both were handcuffed and detained. One officer searched Turner and removed a set of car keys from his pocket.

While the vehicle's occupants were detained, an officer released a drug-sniffing dog, which alerted to narcotics in the vehicle. The officer opened the car door, and while nothing was found on the driver's side of the car, the dog alerted to the presence of narcotics after smelling the area around the front passenger seat. Using one of the keys taken from Turner, an officer opened the locked glove compartment and found approximately a pound of methamphetamine and a firearm.

### B. Procedural History

On December 12, 2018, Turner and West were indicted. Count One alleged that Turner and West conspired to distribute and possess controlled substances, in violation of 21 U.S.C. § 846, from September 1, 2018 until their subsequent arrest on October 3, 2018. The remaining three

counts stemmed only from the October 3 arrest. Count Two alleged that Turner and West possessed methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Three alleged that Turner possessed a firearm in furtherance of the drug trafficking crimes put forth in Counts One and Two, in violation of 18 U.S.C. § 924(c)(1)(A). Finally, Count Four alleged that Turner possessed the firearm after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1).

Turner pleaded not guilty to all charges. He then moved to suppress all evidence obtained from his October 3 arrest. The motion was denied.

While the motion was under consideration, West pleaded guilty. The Grand Jury returned a superseding indictment removing her name from Count One. Around the same time, the government's ongoing investigation revealed that Turner had allegedly trafficked methamphetamine for a longer period and with more people than just West. Specifically, Turner allegedly received assistance with his trafficking activities from Ashley Daugherty, who was not present on October 3. The Grand Jury subsequently returned a second superseding indictment, amending Count One to charge Turner and Daugherty with conspiring with other unnamed individuals to distribute methamphetamine beginning in June 2018.

Turner moved for a separate trial on the acts committed with Daugherty, which he asserted occurred in the Western District of Kentucky, and the acts committed with West, which he asserted occurred in the Eastern District. In Turner's view, the government's best evidence demonstrated only that these were two wholly unrelated conspiracies with a common defendant. The district court found that the government had proffered sufficient evidence to connect not only Turner to the individual co-defendants, but the co-defendants to each other, and subsequently denied his motion.

At trial, both Daugherty and West testified that they acted as intermediaries between Turner (the supplier) and their clients. West testified that Turner was one of two suppliers she used throughout September and October 2018. She was introduced to him by another person, for the sole purpose of obtaining methamphetamine. After their introduction, she procured methamphetamine from him ten times before they were arrested together. At one point, she predicted that they would develop "a great relationship." (Trial Tr., R. 293, PageID 1963.)

The government also presented evidence that Daugherty knew she was participating in a collective venture with Turner. Daugherty testified that she went with Turner to make sales, and knew he worked with other dealers, including West and a woman named Helen or Ann Hardin. Daugherty often went with Turner to Brown's home, where he kept drugs and at least one gun. West and Daugherty also testified that, on one occasion, Turner used Daugherty to supply drugs to West, rather than transferring them personally. This was Daugherty and West's only interaction.

Turner moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 twice. Both motions were denied. After being specifically instructed on multiple conspiracies, the jury found Turner guilty on all counts.

At sentencing, Turner raised four objections, two of which are at issue on appeal. Relevantly, he argued that the calculated base offense level of 38 was incorrect. Turner asserted that any methamphetamine attributable to transactions other than the one orchestrated by West—such as those Daugherty testified to—was not established beyond a reasonable doubt at trial and therefore could not be used in his offense-level calculation. Turner also objected to the adjustment under U.S.S.G. § 3B1.1(a) for organizing or leading a criminal activity involving five or more persons, as only West, Daugherty, and Turner were truly involved in the conspiracy, and he managed no one. Turner additionally filed a motion for a new trial.

The district court overruled in part and sustained in part Turner's objections and denied Turner's motion for a new trial. The court disagreed with Turner's argument regarding the amount of methamphetamine it could use in determining his base offense level for the same reason it denied Turner's initial motion to sever the trial—it found that all those transactions were part of the same course of conduct. But because there was a dearth of evidence regarding the purity of the methamphetamine involved in the transactions that occurred before October 3, 2018, the district court elected to treat those amounts as non-actual meth. With that calculation, the district court lowered the base offense level to 36.

Further, the district court concluded that while there were five members of the conspiracy, Turner was only a manager or supervisor. Accordingly, the enhancement was reduced from four levels to three. The court sentenced Turner to 300 months in prison—240 months on Counts One and Two, and 120 months on Count Four, to run concurrently with each other, but consecutively to the 60 months required by statute on Count Three.

Turner timely appeals.

## II. ANALYSIS

Turner presents four arguments on appeal. First, he argues that the district court improperly denied his motion to suppress the fruits of the October 3, 2018 search and arrest. Second, he renews his challenge to the sufficiency of the evidence used to convict him of Count One at trial. Third, he argues that the district court improperly calculated the total drug weight attributable to him, which improperly raised his base offense level. Finally, he contends that the district court should not have applied the enhancement for being a "manager," as he did not manage anyone. We find none of Turner's arguments persuasive.

### A. Motion to Suppress October 3, 2018 Search

"When reviewing a motion to suppress, [we] must consider evidence in the light most likely to support the district court's decision[.]" *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (internal quotations and citation omitted). "[A] district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (quoting *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993)).

Turner argues that because he had committed no traffic violations or visible crimes upon pulling into the Dollar General parking lot, police lacked probable cause to arrest him. In Turner's view, the decision to arrest him was based solely on his proximity to West, rather than any particularized suspicion as to his criminal involvement. Because there was no valid arrest, Turner argues that the seizure of the keys from his person and the subsequent search of the glove box were invalid as well.

As a general rule, police may not make an arrest or search unless they have a warrant or probable cause. *See* U.S. Const. amend. IV. "A police officer has probable cause only when he discovers *reasonably reliable information* that the suspect has committed a crime," based on "the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). The court "may 'consider only the information possessed by the arresting officer at the time of the arrest.'" *Id.* at 501 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is

that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id.* (citation omitted).

Considering the evidence in the light most likely to support the district court's decision, there was probable cause for the police to arrest Turner without a warrant. Even if Turner was not identified by name, police were monitoring West's phone calls while Turner was driving the car. This includes one phone call where the informant and West hashed out the details of how the transaction was to occur, leaving officers with proof that the occupants of the vehicle were at least aware of the criminal activity that was to occur. Police could infer that Turner was aware of what was happening because he not only drove the vehicle, but parked it in the exact manner that West predicted on the phone. It was also not unreasonable for police to assume that the only man in the vehicle was the "dude" to whom West repeatedly referred to.

Turner's arrest differs sharply from cases such as *United States v. Di Re*, 332 U.S. 581 (1948). In *Di Re*, the defendant was arrested solely because he was present in a car with the target of the officers' investigation. *Id.* at 593. At the time of Di Re's arrest, the officers knew only that he was a passenger in a vehicle with a man police had probable cause to arrest. *Id.* at 592–93. Police had no evidence that Di Re had witnessed, participated in, or had knowledge of any unlawful conduct. *Id.* Here, police had reason to believe that Turner not only knew of, but was an active participant in the drug transaction that was about to occur.

Because Turner was lawfully arrested based on probable cause, the search of Turner's person was a lawful search incident to his arrest. "[S]earches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence,' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.'" *Riley v. California*, 573 U.S. 373, 386 (2014) (quoting *United States v. Robinson*, 414 U.S. 218, 235

(1973)). This principle holds so long as the search is limited to the area within the immediate control of the arrestee and the search is of personal property associated with the arrestee. *Id.* at 384 (first citing *Robinson*, 414 U.S at 235, and then citing *United States v. Chadwick*, 433 U.S. 1, 15 (1977)). Police "may seize both contraband and any instrumentalities, fruits, or evidence of a crime that they discover" when performing a search incident to arrest. *United States v. Stewart*, 315 F. App'x 554, 559 (6th Cir. 2009); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) ("There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior.")

Police officers' search of the Nissan was also lawful. Police "can lawfully search a car without a warrant if they have probable cause." *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020). "The search may extend to containers that could contain relevant evidence, such as a locked glovebox." *United States v. Alexander*, 467 F. App'x 355, 363 (6th Cir. 2012) (citing *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008), *abrogated in part on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009)).

In this case, officers knew that the car Turner drove to the Dollar General parking lot to contained at least a pound of methamphetamine intended for sale. Therefore, it was reasonable to believe that methamphetamine would be found in the car—including in the locked glovebox—providing a nexus between the criminal activity and the keys. Consequently, the search of Turner, the subsequent seizure of Turner's car keys, and the search of the glove box were lawful, even though the car keys on their own were not evidence of a crime.

Because there was probable cause to arrest and search Turner, and probable cause to search the Nissan, we affirm the district court's denial of Turner's motion to suppress.

**B. Sufficiency of the Evidence**

Turner next argues that the government failed to present sufficient evidence to support the existence of a single conspiracy between Turner, West, and Daugherty. Before turning to the merits of this argument, we must first address the government's contention that Turner forfeited his right to challenge the sufficiency of the evidence as to the conspiracy because he did not object to this theory at trial.

A defendant may raise a sufficiency of the evidence challenge on appeal only if they preserved the argument by moving for judgment of acquittal at the close of the government's case-in-chief and at the close of all the evidence. *United States v. Hamm*, 952 F.3d 728, 739–40 (6th Cir. 2020). While an objection on a particular ground is not required under Rule 29, "where a Rule 29 motion is made on specific grounds, all grounds not specified are waived." *Id.* at 740 (quoting *United States v. Dandy*, 998 F.2d 1344, 1356–57 (6th Cir. 1993), *as amended* (Aug. 11, 1993)).

At the close of the government's case-in-chief, Turner's counsel moved for judgment of acquittal under Rule 29. Before he could complete his argument, however, the district court interrupted counsel to question him about the car keys. Turner's counsel responded to that argument. Afterwards, when asked whether he would like to make any other arguments, counsel responded: "No, Judge. We'd rest on that and the other arguments we made throughout the trial." (Trial Tr., R. 295, PageID 2277.) Turner's counsel failed to articulate the basis or grounds for his motion for acquittal. He merely responded to the court's question about the key fob, rather than independently bringing that argument on his own. Accordingly, Turner made a general Rule 29 motion and therefore may re-raise his objection on appeal.

"We review de novo a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010)). In challenging the sufficiency of the evidence, Turner "bears a very heavy burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our role is limited in that we "do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Moreover, "we cannot overturn the jury's decision merely because it had to draw reasonable inferences to find [a defendant] guilty." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007) (en banc).

At issue is Count One of the second superseding indictment, which charged Turner with conspiring with Daugherty and other unnamed individuals to possess and distribute methamphetamine in the Eastern District of Kentucky and elsewhere. A conviction for conspiracy under 21 U.S.C. § 846 requires the government to prove: "(1) an agreement to violate drug laws . . . ; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (citing *United States v. Welch*, 97 F.3d 142, 148–49 (6th Cir. 1996)).

"'[W]hile a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy does not know every other member,' it is necessary to show that each alleged member 'agreed to participate in what he knew to be a collective venture directed toward

a common goal.'" *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) (quoting *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982)). Nevertheless, the government "need not prove an explicit agreement to establish either the existence of the conspiracy, or that the defendant agreed to participate in what he knew to be a joint venture." *Martinez*, 430 F.3d at 333. But, we have cautioned against "[d]efining the common enterprise as simply the illegal sale of drugs," as that "would render the conspiracy an essentially limitless enterprise." *Swafford*, 512 F.3d at 842 n.3.

Turner argues that the evidence does not support a conviction for a single conspiracy, but rather a conspiracy in the Western District of Kentucky alone—rather than the Eastern District, where the indictment was brought. While it is undisputed that the government presented ample evidence of agreement between Daugherty and Turner, Turner argues that he and West had no formal relationship prior to the October 3, 2018 sale, and that the evidence failed to show that Turner, West, and Daugherty worked towards a common goal or scheme.

The government presented sufficient evidence to establish that Turner, Daugherty, and West conspired to violate the drug laws of the United States throughout Kentucky. At trial, West testified that she and Turner had a business relationship, which she regularly used to purchase methamphetamine that she then resold. The two arranged pricing and handed off details over the phone throughout the month of September 2018. Turner supplied her with methamphetamine up to ten times between September and October 2018. It is true that the government did not present evidence of a verbal agreement between Daugherty and West. But, under our circuit precedent, it is not necessary that every member of the conspiracy know every other member. *Martinez*, 430 F.3d at 333–34 (6th Cir. 2005) (finding that, when establishing a defendant's connection to a drug distribution conspiracy, "it is enough to show that each member of the conspiracy realized that he

was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy"). There is evidence showing that Daugherty knew that she was participating in a collective venture with Turner. She rode with him to make sales and knew he worked with other dealers like Hardin and West.

West's knowledge and agreement can also be inferred from "the interdependent nature" of drug distribution. *See Warner*, 690 F.2d at 549. West's success was dependent on the success of others in the conspiracy, such that she must have "realize[d] that [s]he [wa]s participating in a joint enterprise." *Id.* West's transaction with Daugherty reflects that. The methamphetamine that Daugherty delivered to West on Turner's behalf was of poor quality. West warned Turner that if she received methamphetamine of similar quality again, it could jeopardize her business. Similarly, the hours leading up to the evening of October 3 show West's dependence on Turner for success. West relied on Turner not only for methamphetamine, but also transportation to the transaction. Without Turner's assistance, the transaction could not have occurred.

It is also important to note that the jury was specifically instructed on multiple conspiracies, and yet chose to find one conspiracy. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.") As we cannot substitute our judgment for that of the jury, we hold that Turner's conspiracy conviction was supported by the evidence.

## C. Sentencing Enhancements

In reviewing a district court's application of the Sentencing Guidelines, we review "factual findings for clear error and legal conclusions de novo." *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). Questions "involving mixed questions of law and fact receive 'deferential review' and not de novo review." *Id.* (quoting *Buford v. United States*, 532 U.S. 59, 64 (2001));

18 U.S.C. § 3742(e). "The prosecution has the burden to prove by a preponderance of the evidence that [an] enhancement applies." *United States v. Washington*, 715 F.3d 975, 984 (6th Cir. 2013).

### 1. Whether the Quantity of Drugs Attributed to Turner Was Reasonable

Turner, without support, argues that he may be sentenced only on the quantity of drugs sold in the Eastern District of Kentucky—the 432 grams of methamphetamine seized on October 3, 2018. Turner contends that any other drug amounts were not sufficiently established at trial, in an echo of his sufficiency of the evidence argument.

Here, the base offense level was governed by the quantity of drugs for which Turner was responsible. U.S.S.G. §§ 2D1.1(a)(5), (c)(3) & cmt. n.8(D). When calculating that quantity, the district court "can make a reasonable estimate based on physical evidence or testimony." *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020). Drug quantity need only be established by a preponderance of the evidence, and we have noted that "an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). And "testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (quoting *United States v. Hernandez,* 227 F.3d 686, 697 (6th Cir. 2000)).

Turner's co-conspirator, Daugherty, testified that Turner sold seven pounds of methamphetamine every couple of weeks over the course of the conspiracy. The district court noted that Daugherty's testimony was corroborated by text messages illuminating the drug trafficking activities between Turner and others. But, because Daugherty was not specific about the quality of the methamphetamine, the district court decided to treat it as "non-actual meth."

(Sentencing Tr., R. 296, PageID 2418.)  Taking the approximately 25,000 grams[1] of "non-actual meth" and the 432 grams of pure meth seized on October 3, 2018, the district court found that a base offense level of 36 was appropriate.  *See* U.S.S.G. § 2D1.1(c)(2) (relevantly, an individual found responsible for at least 15 kilograms, but less than 45 kilograms of methamphetamine will have a base offense level of 36).  The district court's conservative estimate was not in error.

2.  *Whether the Enhancement for Being a Manager or Supervisor was Applied in Error*

Finally, Turner argues that the district court had no basis for applying the enhancement for being a manager of the conspiracy because he did not manage anyone.

The government had the burden to prove, by a preponderance of the evidence, that Turner managed or supervised criminal activity involving at least five participants.  *See United States v. Sexton*, 894 F.3d 787, 794–95 (6th Cir. 2018).  We review the district court's conclusion with respect to a defendant's role in an offense "deferentially, and its factual findings for clear error." *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017).  This standard recognizes that the "trial judge is most familiar with the facts and is best situated to determine whether someone is or is not a 'leader' of a conspiracy that the jury found existed."  *United States v. Hills*, 27 F.4th 1155, 1199 (6th Cir. 2022) (quoting *Washington*, 715 F.3d at 983).

Turner again argues that West set up the October 3 drug deal on her own, and that he did not manage or control anyone else—without addressing the other members of the conspiracy. Turner was the principal supplier for most of the women in the conspiracy, he set the price of the narcotics they sold, took the majority of their proceeds, and sometimes even determined to whom

---

[1] Seven pounds every two weeks for 4 months (June 2018 through, essentially, end of September 2018) yields 56 pounds of methamphetamine, which is approximately 25.4 kilograms.

they should sell.  Given that these facts were proven at trial, they clearly meet the preponderance of the evidence standard at sentencing.

As there is no clear error in the district court's factual findings, we defer to the district court's conclusion that Turner was a manager.  There is no dispute that Turner did more than "suggest committing the offense," and instead "claimed [a] right to a larger share of the fruits of the crime," "recruit[ed] . . . accomplices," and "exercise[d] . . . decision making authority," as befits a managerial enhancement.  U.S.S.G. § 3B1.1, cmt. n.4.

## III.  CONCLUSION

For the foregoing reasons, we affirm.